## SCHROEDER *v.* CITY OF NEW YORK.

No. 75.  Argued November 15, 1962.—Decided December 17, 1962.

*Louis B. Scheinman* argued the cause and filed briefs for appellant.

*Theodore R. Lee* argued the cause for appellee.  With him on the brief were *Leo A. Larkin* and *Seymour B. Quel.*

Briefs of *amici curiae,* urging reversal, were filed by *Benjamin M. Goldstein* for Goldstein & Goldstein et al. and by *Osmond K. Fraenkel* for the New York Civil Liberties Union.

MR. JUSTICE STEWART delivered the opinion of the Court.

The question presented by this case is whether the City of New York deprived the appellant of due process of law by failing to give her adequate notice of condemnation proceedings affecting certain property she owned on the

Neversink River in Orange County, New York. The property in question consisted of a house and three and one-half acres of land, which the appellant and her family occupied only during the months of July and August each year.

In 1952 the city instituted a proceeding under the provisions of the New York City Water Supply Act [1] to acquire the right to divert a portion of the Neversink River at a point in Sullivan County, New York, some 25 miles upstream from the appellant's property. The Water Supply Act, which sets out the procedure to be followed by the New York Board of Water Supply in condemning land, easements, and rights affecting real property required for the New York City water system, provides that notice of such condemnation proceedings be given to affected landowners in the following manner:

> "The corporation counsel shall give notice in the City Record, and in two public newspapers published in the city of New York and in two public newspapers published in each other county in which any real estate laid out on such maps may be located, and which it is proposed to acquire in the proceeding, of his intention to make application to such court for the appointment of commissioners of appraisal . . . . Such notice shall be so published, once in each week, in each of such newspapers, for six weeks immediately previous to the presentation of such petition; and the corporation counsel shall in addition to such advertisement cause copies of the same in hand bills to be posted up, for the same space of time in at least twenty conspicuous places on the line of the aqueduct or in the vicinity of the real estate so to be taken or affected." [2]

---

[1] Administrative Code of City of New York, Title K41.

[2] Administrative Code of City of New York, Title K41–8.0.

The Act further provides that all claims for damages resulting from the city's acquisition are barred after three years.[3]

Proceeding in accordance with the statute, the city caused notice of its acquisition of the right to divert the Neversink to be published the requisite number of times in the City Record of the City of New York, in two New York City newspapers, and in two newspapers published in Orange County, and in addition posted 22 notices on trees and poles along a seven- or eight-mile stretch of the river in the general vicinity of the appellant's premises. No notice was posted anywhere on the appellant's property itself. The two Orange County newspapers in which publication was made were published in small communities many miles from the appellant's property, although at the time there were newspapers being published in larger Orange County towns nearby. The notices were posted on the trees and poles during the month of January, when the appellant's premises were vacant. Although the appellant's name and address were readily ascertainable from both deed records and tax rolls, neither the newspaper publications nor the posted notices contained the name of the appellant or of any other affected property owner. Neither the newspaper publications nor the posted notices explained what action a property owner might take to recover for damages caused by the city's acquisition, nor did they intimate any time limit upon the filing of a claim by an affected property owner.

The appellant did not file a claim for damages to her property within the three-year period prescribed by the Water Supply Act. In January 1960, however, she brought the present equitable action in a New York trial court. Her complaint alleged that she had never been notified of the condemnation proceedings, and knew noth-

---

[3] Administrative Code of City of New York, Title K41–18.0.

ing about them, nor of her right to make a claim against the city for damages to her property, until after she had consulted a lawyer in 1959. She alleged that by failing to give her adequate notice of the condemnation proceedings, the city had deprived her of property in violation of due process of law. The trial court granted the city's motion for judgment on the pleadings in an unreported opinion holding that "the notice provisions of Section K 41–8.0 of the Water Supply Act—admittedly fully complied with by the defendant"—were not "violative of the due process provisions of the Federal and State Constitutions . . . ." This judgment was affirmed by the Appellate Division,[4] and by the New York Court of Appeals, two judges dissenting.[5] The case is properly here on appeal under 28 U. S. C. § 1257 (2).

We hold that the newspaper publications and posted notices in the circumstances of this case did not measure up to the quality of notice which the Due Process Clause of the Fourteenth Amendment requires.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Milliken* v. *Meyer,* 311 U. S. 457; *Grannis* v. *Ordean,* 234 U. S. 385; *Priest* v. *Las Vegas,* 232 U. S. 604; *Roller* v. *Holly,* 176 U. S. 398." *Mullane* v. *Central*

---

[4] 14 App. Div. 2d 183, 217 N. Y. S. 2d 975.

[5] 10 N. Y. 2d 522, 180 N. E. 2d 568. Although the complaint prayed for a judgment enjoining the city from diverting the waters of the Neversink, the New York courts construed the pleading as the appropriate way to raise the question of the adequacy of the notice provisions and to assert the right to be heard on the issue of damages. In her brief the appellant has conceded that she is not entitled to an injunction. Cf. *Walker* v. *Hutchinson City,* 352 U. S. 112, 114, n. 3.

*Hanover Tr. Co.,* 339 U. S. 306, 314. In the *Mullane* case, which involved notice by publication to the beneficiaries of a common trust fund, the Court thoroughly canvassed the problem of sufficiency of notice under the Due Process Clause, pointing out the reasons behind the basic constitutional rule, as well as the practical considerations which make it impossible to draw a standard set of specifications as to what is constitutionally adequate notice, to be mechanically applied in every situation.

As was emphasized in *Mullane,* the requirement that parties be notified of proceedings affecting their legally protected interests is obviously a vital corollary to one of the most fundamental requisites of due process—the right to be heard. "This right . . . has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." 339 U. S., at 314. The Court recognized the practical impossibility of giving personal notice in some cases, such as those involving missing or unknown persons. But the inadequacies of "notice" by publication were described in words that bear repeating here:

> "Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when, as here, the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention." 339 U. S., at 315.

The general rule that emerges from the *Mullane* case is that notice by publication is not enough with respect to a person whose name and address are known or very

easily ascertainable and whose legally protected interests are directly affected by the proceedings in question. "Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." 339 U. S., at 318.

This rule was applied in *New York* v. *New York, N. H. & H. R. Co.*, 344 U. S. 293, 296, where the Court pointed out that "[n]otice by publication is a poor and sometimes a hopeless substitute for actual service of notice," and that "[i]ts justification is difficult at best." The rule was applied again in *Walker* v. *Hutchinson City*, 352 U. S. 112, in a factual situation much akin to that in the present case. In *Walker* part of the appellant's land had been taken in condemnation proceedings, and he had been given "notice" of a proceeding to fix his compensation only by publication in the official city newspaper. The Court held that such notice was constitutionally insufficient, noting that the appellant's name "was known to the city and was on the official records," and that "[e]ven a letter would have apprised him that his property was about to be taken and that he must appear if he wanted to be heard as to its value." 352 U. S., at 116.

Decision in the case before us we think is clearly controlled by the rule stated in the *Mullane* case, and by the specifically relevant application of that rule in the *Walker* case. It is true that in addition to publishing in newspapers, the city in the present case did put some signs on trees and poles along the banks of the river. But no such sign was placed anywhere on the appellant's property, or ever seen by her. The posting of these signs, therefore, did not constitute the personal notice that the rule enunciated in the *Mullane* case requires.

The majority opinion in the New York Court of Appeals seems additionally to have drawn support from an assumption that the effect of the city's diversion of the

river must have been apparent to the appellant before the expiration of the three-year period within which the statute required that her claim be filed. 10 N. Y. 2d, at 526–527, 180 N. E. 2d, at 569–570. There was no such allegation in the pleadings, upon which the case was decided by the trial court. But even putting this consideration aside, knowledge of a change in the appearance of the river is far short of notice that the city had diverted it and that the appellant had a right to be heard on a claim for compensation for damages resulting from the diversion.[6] That was the information which the city was constitutionally obliged to make at least a good faith effort to give personally to the appellant—an obligation which the mailing of a single letter would have discharged.

The judgment of the New York Court of Appeals is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

---

[6] The complaint alleged damages based upon the impairment of the river's value to the appellant for "bathing, swimming, fishing and boating." This claimed impairment allegedly resulted not from any change in the river's course, depth, or configuration, but from a decrease in the velocity of its flow.