A. Franklin Mahoney, J.
This is a motion pursuant to title K of chapter 51 of the Administrative Code of the City of New York (hereinafter referred to as the Water Supply Act) wherein certain claimants are seeking to intervene in proceedings, pending at the time of this motion but subsequently decided,[1] before the Commissioners of Appraisal, heretofore appointed by order to ascertain and determine compensation due riparian landowners damaged by the taking, impounding and diverting of the waters in the Never sink River by the City of New York in order to insure an adequate water supply for that city.
If the motion were to be granted the resultant order would require (1) that all the movants, represented herein by Willard and Christina Adams, be included in the proceedings as principals; (2) that the taking date by the City of New York be changed, thus requiring the giving of further notice to claimants wherein they would be named as principals; and (3) direct the Commissioners to ascertain the value of the respective claims of those seeking to intervene. Such an order would also require the amendment of all the maps, plans and surveys heretofore filed: The City of New York cross-moves to dismiss the claims and counsel for the estate of Joseph W. Fowler joins in the cross motion.
A brief recitation of relevant background information is necessary to a proper understanding of this motion.
In 1927 the Board of Water Supply of the City of New York recommended to the Board of Estimate and Apportionment a need for the development of an additional supply of water from tributaries of the Delaware River, including the Never sink River. Thereafter, public hearings were held and a resolution dated June 12, 1928 was approved adopting the final map of the project. The “final” map was approved by the State Water Power and Control Commission as required by section K41-47.0 of the Water Supply Act (Matter of Strauss, 167 App. Div. 162, 166). Prior to the hearing before the Water Power and Control Commission, which resulted in the adoption of the map, the commission had designated 46 newspapers in which *902 the notice of the hearing was to be published. One of such newspapers was the Evening World. Inadvertently, the notice was published in Morning World. Counsel for New York moved to amend the order requiring publication to include the Morning World and eliminate the Evening World. The motion was granted.
Thereafter, the Board of Water Supply adopted modifications of the map which were duly approved by the Board of Estimate and the Water Power and Control Commission. The map, modifications and duplicates were duly filed in the Clerk’s offices of Orange and Sullivan Counties. Upon these maps the various parcels which the city sought to appropriate were numbered and the parcel, subject to this motion, was numbered 299. The owner of Parcel 299 at the time of filing was Joseph W. Fowler. The Corporation Counsel pursuant to section K41-8.0 of the Water Supply Act made an application for appointment of Commissioners of Appraisal for Neversink Riparian Section 4 (including Parcel 299) on January 10,1952. The order appointing the Commissioners was dated March 14, 1952 and entered in the Orange County Clerk’s office on May 29, 1952. The Commissioners subscribed to their oaths of office on June 2, 1952 and said oaths were filed in Orange County on June 6,1952 and certified copies of the oaths were filed in the New York County Clerk’s office on June 9,1952. By operation of law (Water Supply Act, § K41-11.0; now § K51-11.0) the city became vested with the right to divert waters of the Neversink River as of that date.
Subsequent to June 9, 1952, Joseph W. Fowler conveyed certain properties contained within Parcel 299 to Willard and Christina Adams and other persons named in the moving papers. None of the deeds contained a conveyance of Fowler’s claim nor was any assignment of claim given to any of Fowler’s grantees who are a party to this motion. Subsequent to the conveyances Fowler died and his estate commenced proceedings before the Commissioners of Appraisal for damages to his property resulting from the taking of June 9, 1952. At the hearing of these claims the claimant-movants herein (all grantees of Fowler subsequent to June 9, 1952) sought to intervene. The commission ruled it had no authority to decide adverse title claims, said function being solely within the jurisdiction and competence of the Supreme Court.[2]
*903 This proceeding was commenced to determine the validity of the claims of Fowler’s grantees.
To resolve this issue the court must determine the exact date that the city became seized in fee of Parcel 299. If it should- be determined that the so-called ‘ ‘ taking ’ ’ date was June 9, 1952, then clearly the claims must be dismissed. As of that date all of the claimants were strangers to the title of any part of Parcel 299. If it should be determined that the fee did not vest in the city on June 9, 1952 but at some date subsequent to the conveyances to the claimants herein, then the court would have to determine if, prior to the ‘ ‘ taking ’ ’ date, these claimants, as Fowler’s grantees, had acquired any right, title or interest in Fowler’s claim.
In my view, the resolution of both issues requires the dismissal of the claims.
First, there can be no doubt that the final map was approved, adopted and filed pursuant to section K51-5.0 of the Water Supply Act and that the oaths of the Commissioners were filed in the manner provided in section K51-10.0 of the act. The result of these acts was the vesting of the fee in the City of New York, all as provided in section K51-10.0.
The claimant-petitioners contend that vesting did not occur because of the irregularity hereinabove noted with respect to the notice of the proceedings before the Water Power and Control Commission in 1928 being published in the wrong newspaper. This irregularity was corrected by motion before the commission, in the absence of objection by anyone entitled to notice, and will not be considered at this late date as a valid reason to abrogate otherwise precise procedure by the City of New York in compliance with the statutory requirements of the Water Supply Act. In any event, none of the claimants herein was entitled to any notice in 1928.
The next challenge to the vesting of title in the city rests on the decision of the United States Supreme Court in the case of Schroeder v. City of New York (371 U. S. 208). That case began its journey to the highest court in the land in 1959 when Margaret C. Schroeder began an action seeking a judgment enjoining the city from diverting the waters of the Never sink River. The New York courts determined that no such relief was justified but, nevertheless, chose to construe the complaint as an appropriate vehicle to test the notice provisions of the Water Supply Act (§ K51-8.0). The Supreme Court, Special Term, found such provisions to be adequate and dismissed the complaint. The Appellate Division (3d Dept.) and the Court of Appeals affirmed (Schroeder v. City of New York, 10 N Y 2d 522). The case then *904 went to the United States Supreme Court on constitutional grounds and that body found the said notice provisions to be unconstitutional and, accordingly, ineffective as a defense to a claim not commenced within the three-year period of limitations provided in section K51-18.0 of the act. The. petitioners herein argue that since the notice provisions of the Water Supply Act, in 1969, did not measure up to the quality of notice which the due process clause of the Fourteenth Amendment of the Federal Constitution requires, the vesting of a fee interest could not have occurred upon the filing of the oaths of the Commissioners on June 9,1952. This argument, in my view, results from a misreading of the holding in Schroeder. The court held the notice given was defective as a defense to a claim not commenced within the three-year period of limitations. Implicit in such a holding is the right of Mrs. Schroeder to maintain her claim for damages because the notice to her was not personal. To construe Schroeder otherwise would be tantamount to saying Mrs. Schroeder had no claim because of a failure of vesting in the city. The ruling in Schroeder was a further enunciation of the holding in Mullane v. Central Hanover Trust Co. (339 U. S. 306) to the effect that fundamental due process requires that holders of legally protected interests be notified personally, if possible, that proceedings adverse to their interests are being initiated. In Schroeder, the name and address of the plaintiff were readily available and “ the mailing of a single letter would have discharged ” the obligation of notice (see Schroeder, p. 214). The Schroeder case did not hold that personal notice is required in all cases and, further, did not conclude that the publication of notice in 46 newspapers of the city’s intention to make application for the appointment of Commissioners of Appraisal (Water Supply Act, § K51-8.0) was constitutionally defective so as to prevent the vesting of title in the City of New York (§ K51-11.0). Due process does not require, nor did Schroeder hold, that notice of “ taking ” be personal, but only that it be of a quality, under all the circumstances obtaining, that is designed to give the maximum opportunity to be heard to all likely to be affected by the subtle procedure of transferring title of realty by operation of law. It is, therefore, the conclusion of the court that the vesting of title in the city of Parcel 299 on June 9, 1952 was undisturbed by the Schroeder case.
Even assuming, arguendo, that title did not vest in the city on June 9, 1952, it is still my view that the petitioners’ claims are invalid. For the purpose of discussion I shall assume a !“ taking ” date subsequent in time to all the conveyances by Fowler to the petitioners. There would still be no damage, *905 other than to Fowler’s estate, for nothing passed to these petitioners as grantees. As pointed out in the city’s brief in the following citation from Nichols, Eminent Domain (vol. 2, 3d ed., pp. 33-36, § 5.21) “ if a parcel of land is sold after a portion of it has been taken or after it has been injuriously affected * * * the right to compensation, constitutional or statutory, does not run with the land but remains a personal claim in the hands of the vendor, unless it has been assigned by a special assignment or by a provision in the deed. It is immaterial that the question of compensation is deferred.” Ooncededly, none of the conveyances contained any assignment of Fowler’s claim and the printed form language of the deeds, to wit, ‘ ‘ together with the appurtenances and all the estate and rights of the party (ies) of the first part in and to the said premises ” does not transfer personal claims for damages. In the absence of a special assignment or a provision in the deeds, other than that quoted above, no part of Fowler’s claim for damages passed to these petitioners.
I, therefore, conclude that title vested in the City of New York on June 9, 1952, and these petitioners-claimants have no right to intervene in this matter.
The motion of petitioners is denied and the cross motion of the City of New York, in which the estate of Joseph W. Fowler has joined, to dismiss the claims, is granted.

. See page 902 of this decision.

. The Commission handed down its report on February 28, 1969 wherein it determined there had been a decrease in the fair and reasonable value of Parcel 299 and that Fowler’s estate together with the interest of Fowler’s widow had been damaged in the sum of $16,000.