## Crouse v. Borough of Riegelsville

*Peter N. Harrison,* for appellants.
*Charles H. Dorsett, Jr.,* contra.

MOUNTENAY, J., June 12, 1974.—This matter comes before the court on appeal nunc pro tunc from an ordinance of Riegelsville Borough adopted pursuant to section 426 of The Borough Code, Act of February 1, 1966, P. L. (1965) 1656, 53 PS §45426, annexing 298 acres of land from Durham Township following the filing of a petition for annexation signed by all of the freeholders of the land sought to be annexed.

The first question presented involves the timeliness

of the appeal. The ordinance in question was adopted without prior notice on December 30, 1968. It was advertised in the Doylestown Intelligencer on January 27, 1969, and the present appeal was filed on February 24, 1969, this being beyond the period of 30 days from the date of passage but within the period of 30 days of the date of publication.

Section 1006(4) of The Borough Code, 53 PS §46006(4), requires that every ordinance of a legislative character be published once in a newspaper of general circulation in the borough. Section 1008(a), 53 PS §46008(a), then provides that no ordinance of a legislative character shall be considered in force until so advertised. Finally, section 1010, 53 PS §46010, *as of the date of the filing of the appeal,* provided that complaint as to the legality of an ordinance might be filed within 30 days after enactment. Since the instant appeal was filed beyond the 30-day period following *enactment,* the borough contends that the appeal is not timely. The township, of course, argues that the appeal should run from the date of publication.

There appears to be a conflict of authority as to whether an annexation ordinance is of a type which requires publication under sections 1006 and 1008.* However, whether or not publication constitutes a prerequisite of the effectiveness of an ordinance, it seems obvious that one's appeal rights are meaningless unless he has some notice of the action from which he is purportedly given a right to appeal. The mere

---

* To the effect that publication is required: In Re Annexation of Colebrookdale Township, 54 Berks 199 (1963); Versailles Township Annexation Case-Eden Park Borough Appeal, 161 Pa. Superior Ct. 122 (1947); Semble, Lemoyne Borough Annexation Case, 176 Pa. Superior Ct. 38 (1954). Contra: Castle Shannon Borough Annexation Case, 160 Pa. Superior Ct. 475 (1947); Millersville Borough Annexation Case, 62 Lanc. 275 (1969).

fact that the instant appeal was filed not prior to publication but within 30 days following publication is somewhat indicative of the township's prior ignorance of the enactment of the ordinance. It may also be significant that there were only three subscribers to the Doylestown Intelligencer in the Riegelsville Borough-Durham Township area at the time of publication, and no copies were sold in that area "over the counter" or by carrier.

The legislative history of section 1010 sheds some light on the question of the date from which the appeal time is intended to run. The Borough Code of 1966 was derived from the Act of May 4, 1927, P. L. 519, as amended May 18, 1933, P. L. 818, and the Act of July 10, 1947, P. L. 1621. The code prior to the Code of 1966 provided:

"Section 1010. Appeals from Ordinances.—Complaint as to the legality of any ordinance or resolution may be made to the court of quarter sessions, upon entering into recognizance with sufficient security to prosecute the same with effect and for the payment of costs, by any person aggrieved, *within thirty days after any ordinance or resolution takes effect,* and the determination and order of the court thereon shall be conclusive. In cases of ordinances effecting annexation of territory or laying out streets over private lands, the court shall have jurisdiction to review the propriety as well as legality of the ordinance." (Emphasis supplied)

The Borough Code of 1966, possibly through an oversight of the draftsmen, provided:

"Complaint as to the legality of any ordinance or resolution may be made to the court of quarter sessions, upon entering into recognizance with sufficient security to prosecute the same with effect and for the payment of costs, by any person aggrieved,

*within thirty days after the enactment of any ordinance* or the adoption of any resolution, and the determination and order of the court thereon shall be conclusive. In case of ordinances pertaining to change of boundaries or territorial limits of any borough, such complaint shall be as provided in section 411 of this act. In cases of ordinances effecting change of boundaries or territorial limits of any borough or laying out streets over private lands, the court shall have jurisdiction to review the propriety as well as the legality of the ordinance. No such appeal shall act as a supersedeas unless the court shall so order or unless specifically otherwise provided in this or any other applicable act." (Emphasis supplied)

By amendment enacted December 10, 1970, P. L. 912, 53 PS §46010, the section was amended as follows:

"Complaint as to the legality of any ordinance or resolution may be made to the court of quarter sessions, upon entering into recognizance with sufficient security to prosecute the same with effect and for the payment of costs, by any person aggrieved, *within thirty days after the advertisement of any ordinance* or the adoption of any resolution, and the determination and order of the court thereon shall be conclusive. In cases of ordinances effecting change of boundaries or territorial limits of any borough or laying out streets over private lands, the court shall have jurisdiction to review the propriety as well as the legality of the ordinance. No such appeal shall act as a supersedeas unless the court shall so order or unless specifically otherwise provided in this or any other applicable act." (Emphasis supplied)

It would appear from the foregoing, therefore, that the legislature itself was aware of the inadequacy of

the notice provisions of section 1010 as enacted in 1966.

Whether or not the borough complied with the letter of the law in publishing the ordinance, we are of the opinion that to deny the township the opportunity to file its appeal nunc pro tunc would constitute a deprivation of due process. While we have found no Pennsylvania cases addressing themselves to this particular point, the Supreme Court of the State of Washington recently dealt with the question here involved. In City of Tukwila v. King County, 469 P. 2d 878 (1970), the court said:

"There is a distinction which must be drawn between statutory notice and notice required by due process. The United States Supreme Court has held that in some circumstances notice by publication, required by statute, may be inadequate to meet the requirements of constitutional notice. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950); Schroeder v. City of New York, 371 U.S. 208, 83 S. Ct. 279, 9 L. Ed. 2d 255 (1962). However, as Schroeder, supra, pointed out, there are 'practical considerations which make it impossible to draw a standard set of specifications as to what is constitutionally adequate notice, to be mechanically applied in every situation' . . . Appellant county contends that there should also have been notice to other property owners in the vicinity. We agree. . . . [W]e are not here concerned with notice required by due process in order for the property owners in the vicinity of, but not within, the proposed area to be annexed to be able to protect their interests. Cf. Walker v. Hutchinson City, 352 U.S. 112, 77 S. Ct. 200, 1 L. Ed. 2d 178 (1956) ('notice required will vary with circumstances and conditions')."

Moreover, Mr. Justice Jackson, speaking for the United States Supreme Court in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 315, 94 L. Ed. 865, 873 (1950), said:

"The criterion [whether a statutory provision for notice meets the requirements for due process] is not the possibility of conceivable injury, but the just and reasonable character of the requirements having reference to the subject with which the statute deals."

In Schroeder v. City of New York, 371 U. S. 208, 9 L. Ed. 2d 255 (1962), Mr. Justice Potter Stewart, speaking for the court, held that newspaper publication and posted notices did not measure up to the quality of notice which the due process clause of the fourteenth amendment requires.

In addition to the constitutional question here involved, consideration should be given to the Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 52, 46 PS §552. The Statutory Construction Act provides:

"In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others:

"(1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable;

"(2) That the Legislature intends the entire statute to be effective and certain."

In Stollar v. Continental Can Company, 407 Pa. 264, 268 (1962), the court said:

" 'To fail to give effect to all of the provisions of a statute or to give them an unreasonable or absurd construction violates the fundamental rules of statutory interpretation.' "

We are not unmindful of the opinion of the Com-

monwealth Court in Township of Franklin v. Borough of Delmont, 2 Pa. Commonwealth Ct. 310 (1971). In that case, there were two questions involved:

(1) The timeliness of the appeal, and

(2) The failure to file an appeal bond with proper surety.

The Commonwealth Court quashed the appeal. However, in that case, it appears that the question of the constitutionality of the enabling statute was not raised, and, even if it had been, the court may have quashed the appeal for failure to file a proper recognizance.

Counsel for the respondents also cites Norwegian Township v. Minersville, 5 Pa. Commonwealth Ct. 296 (1972), in support of his position that the present appeal was not timely. Concededly, this case holds that an appeal filed more than 30 days after enactment of an ordinance cannot be sustained, but the lack of notice complained of in that case did not involve publication of the ordinance following enactment. We believe, therefore, that the Norwegian Township case is clearly distinguishable from the situation at hand.

In view of the constitutional issue presented by the inadequacy of notice of the enactment of the ordinance in question, we feel constrained to approve the nunc pro tunc filing of the township's appeal.

The manner of publication of the ordinance raises questions pertaining not only to the timeliness of the appeal but also to the validity of the ordinance itself. As pointed out above, section 1006(4) of the Borough Code, 53 PS §46006(4), requires that every ordinance of a legislative character be published in a newspaper of general circulation in the borough, and section 1008(a), 53 PS §46008(a) provides that no such ordinance shall be considered in force until so advertised. The code establishes no time limit within which an

ordinance must be advertised following passage, but it does require that the publication be in a newspaper of general circulation within the borough. By stipulation, the parties have agreed that the Doylestown Intelligencer as of January 27, 1969, the date of publication, had but three subscribers in the Riegelsville Borough-Durham Township area, that no newspapers were sold "over the counter" and that there was no carrier service in that area. This, argues the township, nullifies the annexation ordinance in that the newspaper was not one "of general circulation in the borough."

As already noted, the authorities are conflicting as to whether an *annexation* ordinance need be published at all. While we are inclined toward the opinion that the sections 1006 and 1008 do require the publication of *annexation* ordinances, we do not so hold in view of our conclusion that despite the sparsity of copies of the Doylestown Intelligencer in the area in question, the newspaper does nevertheless constitute a newspaper "of general circulation in the borough."

The term "newspaper of general circulation" is thus defined in the Newspaper Advertising Act, Act of May 16, 1929, P. L. 1784, sec. 3(4), as amended, 45 PS §3(4):

" 'Newspaper of General Circulation' means a newspaper issued daily, or not less than once a week, intended for general distribution and circulation, and sold at fixed prices per copy per week, per month, or per annum, to subscribers and readers without regard to business, trade, profession or class."

It appears, therefore, that the words "general circulation" refer not to the geographical area of circulation but rather to the nature of the publication itself. We take judicial notice of the fact that the Daily Intelligencer is issued daily, is intended for general distribu-

tion and circulation, and is sold at fixed prices to subscribers without regard to business, trade, profession or class.

Having established that the Doylestown Intelligencer is a "newspaper of general circulation," we come to the question of whether the Doylestown Intelligencer is a newspaper of general circulation *in the Borough* of Riegelsville.

It is difficult to determine what the words "in the borough" mean. It appears that the only case construing this definition is Mateer et al. v. Swissvale Borough et al., 335 Pa. 345 (1939). That case involved the validity of advertising for bid proposals. In Mateer, there was testimony that the newspaper was published outside of the borough in question but that there were subscriptions in the borough. However, there was no evidence as to the number of subscriptions in the borough. Despite this, the court concluded that the newspaper in question did constitute a "newspaper of general circulation" and also a newspaper "circulating generally in the borough": Ibid. at page 351. It should be noted that the statutory requirement with which we are dealing in the instant case does not even call for a newspaper of general circulation *"circulating* generally in the borough." Section 1006 simply requires "a newspaper of general circulation in the borough."

We are not prepared to hold that while ten subscriptions in a borough the size of Riegelsville (1,050 according to the 1970 census) might fulfill the requirement of "in the borough," a circulation of three subscriptions in a borough of the same size would not. We agree that the statutory language is ambiguous, but any deficiencies thereof must be corrected by the legislative process. We conclude, therefore, that the Daily Intelligencer did constitute a "newspaper of general circu-

lation in the borough." We further note that even if publication in the Doylestown Intelligencer did not meet the requirements of sections 1006 and 1008 of The Borough Code, the deficiency could possibly be corrected by republication even at this stage of the proceedings.

The parties have by stipulation agreed that all procedural requirements, aside from those discussed above, have been met. This brings us, then, to a consideration of the "propriety," as distinguished from the "legality," of the ordinance in question. Very little testimony was introduced with respect to considerations of propriety, it appearing that the parties regarded the legality issues as paramount and the propriety issues as subordinate. Interestingly enough, the only witnesses called were officials of the respective municipalities themselves. and none of the petitioners themselves offered any testimony.

The principal advantage urged in support of annexation is police protection in that the borough has its own full-time police department, while the township does not. There was also testimony to the effect that a water company offered public water service to borough properties and that a volunteer fire company maintained its headquarters in the borough. However, it appeared that water service and fire protection might be equally available to the properties in question whether annexed or not. There was no evidence that any of the properties would suffer any disadvantages by reason of the annexation, but the township offered testimony to the effect that the annexation would result in a $500 tax loss out of an annual budget of $22,000 and that an inconsequential length of township road would be lost to the borough.

On balance, we believe that the advantages to be realized by the annexation outweigh the disad-

vantages, although, we repeat, the facts upon which we make this determination are minimal. Be that as it may, all of the property owners involved have requested annexation, and it is not the province of the court to set aside the will of the petitioners and of the annexing municipality unless cogent reasons appear to convince the court that the annexation is opposed to the public interest: West Mead Township v. Meadville, 6 Pa. Commonwealth Ct. 265 (1972); Irwin Borough Annexation Case, 171 Pa. Superior Ct. 256 (1952). No such reasons are apparent in the present instance.

### ORDER

And now, June 12, A.D., 1974, the within complaint against the legality and propriety of Ordinance No. 105 of the Borough of Riegelsville, dated December 30, 1968, annexing 290 acres of land, more or less, of Durham Township, is hereby dismissed and the annexation confirmed.