No. **A-CV-30-89**

# Supreme Court of the Navajo Nation

**In the Matter of the Estate of Ned Plummer Sr.**
**Hugh Plummer, Appellant,**
v.
**Bekisbah Plummer, Appellee.**
**Decided October 12, 1990**

Before TSO, Chief Justice, AUSTIN and CADMAN (sitting by designation), Associate Justices.

Richie Nez, Esq., Window Rock, Navajo Nation (Arizona), for the Appellant; and John H. Schuelke, Esq., Gallup, New Mexico, for the Appellee.

Opinion delivered by CADMAN, Associate Justice.

This is an appeal from an order enforcing a probate decree. The order required an unsuccessful heir and claimant against an intestate estate to remove his cattle from grazing permit lands awarded to the decedent's surviving widow.

On appeal, the appellant, Hugh Plummer, claims an abuse of discretion and prejudicial error because the Crownpoint District Court refused to grant a continuance of the hearing on an order to show cause and it refused to entertain the appellant's claim that he had "a right to graze livestock on lands not covered by the two grazing permits awarded to the appellee, [Bekisbah Plummer; the surviving spouse]."

We affirm the order of the district court and in doing so we will discuss the matter of litigant delay and resistance to proper orders of our courts.

## I. THE CASE

Ned Plummer Sr., born in 1897, died on October 6, 1986 at age 88. His widow, Bekisbah Yazzie Plummer, filed a petition for the administration of an estate on October 16, 1986. That petition listed Hugh Plummer as the decedent's son from a prior marriage and as one of the known heirs. Hugh Plummer received due notice of the filing of the petition, as well as a copy of an initial inventory of September 24, 1987. The inventory listed Grazing Permits Nos. 14-676 and 14-677 as part of the estate assets.

Hugh Plummer responded to both the petition and the inventory by making a claim for "part" of the grazing permits as a child of the decedent. He made his claim on October 22, 1987. On January 12, 1988, he moved to amend the claim, asserting that he was entitled to interests in the grazing permits under Navajo

common law. In addition, he contested the adequacy of the initial inventory and made more than one request for an accounting.

Following various hearings, exchanges of pleadings, and ample notice to all the affected parties, the court held a hearing on the probate on March 8, 1988. On March 22, 1988, after having heard the contentions and the evidence offered by the parties, including those of Hugh Plummer who was present at the hearing, the court entered its "Order for Complete Settlement." We refer to this order as the probate decree.

The decree found that Bekisbah Plummer was the surviving spouse of the decedent and that she was entitled to one-half of the grazing permits as the surviving spouse, already having the other half as community property acquired during the marriage. The court specifically awarded her Grazing Permits Nos. 14-676 and 14-677 in District 14-3.

On April 21, 1988, Hugh Plummer moved the court to reconsider its decree, reciting difficulties obtaining the presence of witnesses and asserting that they could provide new evidence. Bekisbah Plummer resisted the motion, and on June 3, 1988, the court denied it on the ground that Hugh Plummer had failed to satisfy the standards required to reopen the case. Hugh Plummer did not appeal from either the decree or the order denying the motion to reconsider.

On October 12, 1988, Bekisbah Plummer's attorney sent a demand letter to Hugh Plummer, asking him to remove his cattle from the grazing permit areas within 30 days. There was no response to the letter, so on May 24, 1988, Bekisbah Plummer filed a motion to enforce the probate decree through the issuance of an order to show cause. The district court issued an order to show cause on July 6, 1989, setting a hearing for August 17, 1989. Hugh Plummer received notice of the hearing on July 12, 1989.

On the morning of the hearing Hugh Plummer arrived in court with a new attorney, Richie Nez. Nez offered the court a written motion for continuance based on the ground that "he ha[d] just been retained and ha[d] not had sufficient time to review the legal pleadings and orders of th[e] court in this cause of action." In addition, Nez asserted in his motion that he needed a continuance in order to provide competent counsel. The transcript of proceedings show that Nez argued his motion well, advising the court he had only been retained by Hugh Plummer the day before the hearing. John H. Schuelke, Esq., Bekisbah Plummer's attorney, politely but forcefully resisted the motion, pointing out the long history of litigation of the probate and the fact Mr. Plummer had failed or refused to respond to the October, 1988 demand letter. The record shows that Mrs. Plummer had sent a prior demand letter in April of 1987, and it is likely Mr. Plummer refused to respond to that letter also.

The court noted the need to resolve the matter and attempted to get the parties to work things out in a conference held during a recess. They were unable to do so, and the hearing on the order to show cause proceeded.

On appeal, Hugh Plummer asserts that the lands which were subject to the

grazing permits did not include a Bureau of Indian Affairs "Demonstration Area," where he was grazing his livestock. The transcript shows that there was a great deal of argument on the point, with some testimony and argument in Navajo. The proceedings in Navajo were not transcribed. The court refused to allow testimony on the point, given the prior probate proceedings.

Hugh Plummer acknowledges that our district courts have the discretion to grant a continuance, but he asserts that there was an abuse of discretion. He also claims that he should have been allowed to proceed with his claim that the grazing permits were subject to a "Demonstration Area" withdrawal, and the refusal of the court to permit him to do so was error.

## II. CONTINUANCE

The appellant raises the standards of the granting of a continuance in our prior decision in *Battles v. General Electric Credit Corp.*, 4 Nav. R. 26 (1983). He also cites the Window Rock District Court opinion in the criminal case, *Navajo Nation v. Rico*, 4 Nav. R. 175 (Window Rock Dist. Ct. 1983).

The situation in *Battles* was that a trial was scheduled, and while Battles appeared for it, his counsel did not. *Id.* We found that he was prejudiced because he expected his counsel to handle the case and he had no opportunity to prepare his defense himself, although he was a member of the Navajo Nation Bar Association. *Id.* at 28-29. The rule we applied on how the district court is to exercise its discretion is as follows: "It calls upon counsel to clearly and precisely give the court good reasons for a continuance, to show that prejudice will result if the continuance is not granted and to state specific, concrete reasons to the court." *Id.* at 28.

In *Navajo Nation v. Rico*, the district court applied a higher standard for a prosecution continuance because it was a criminal action and the defendant had special rights. 4 Nav. R. 175, 176. There a prosecution witness was not available for trial because he had to attend a mandatory police training session at the Indian Police Academy in Brigham City, Utah. The court found that he was a material witness and that the prosecution had shown good cause for a continuance. *Id.* at 175, 177.

In *Battles*, the court instructed that, "[t]he use of discretion calls upon the court to consider many surrounding circumstances, such as the practical consequences of the party having to go to trial and the opposing party having to suffer a delay." 4 Nav. R. at 28. In light of the *Battles* principles, how did the district court exercise its discretion here?

The order which is the subject of this appeal shows that the district court carefully weighed the comparative rights of the parties. It shows consideration of the facts that the probate decree was entered on March 22, 1988, a motion for reconsideration was considered and denied, and no appeal was taken from that order or the decree. It shows the trial court considered the fact that more than one year

had passed since entry of the decree, and that decision was final. In other words, the court concluded that Mr. Plummer had sufficient time and opportunity to raise his defense before, and there was no good cause to delay the matter further.

It appears Hugh Plummer continuously used the grazing permit lands for his own use since the death of the decedent in October, 1986. He disregarded both April, 1987 and October, 1988 demands to remove the cattle. He had continuously used property not his own for almost three years, disregarding polite demands and clear court determinations of rights. The transcript of proceedings show that the trial court took all these matters into consideration and concluded that it would be unjust not to proceed.

Hugh Plummer was notified of the August 17, 1989 hearing on July 12, 1989. He had plenty of time to prepare for the August 17, 1989 hearing and he had an ample opportunity to obtain counsel. The ground for a continuance, earnestly offered by counsel, was that he had only been retained the day before the hearing. That was not "good cause" for the grant of a continuance, and the trial court correctly applied the old legal maxim, "Delay of justice is injustice."

In addition to arguing the procedural law of continuances, the appellant claims that the court's refusal to grant a continuance denies due process of law. The facts here come nowhere near proving the assertion, but we take the opportunity to discuss the fundamental right to be heard, or the opportunity to be heard, as a due process element of continuance motions. *Schroeder v. New York City*, 371 U.S. 208 (1972); *Armstrong v. Manzo*, 380 U.S. 545 (1965).

These days it is axiomatic or the standard drill that lawyers will raise the banner of due process under the Indian Civil Rights Act at every opportunity. That Act is important, and of equal or greater importance is the Navajo Nation Bill of Rights due process protection. 1 N.T.C. § 3 (1986). Justice Frankfurther, who was instrumental in the development of modern due process doctrine, said, "[T]he Due Process Clause embodies a system of rights based on moral principles so deeply embedded in the traditions and feelings of our people as to be deemed fundamental to a civilized society as conceived by our whole history." *Solesbee v. Balkcom*, 339 U.S. 9 (1950) (Dissent). When Frankfurther referred to "our people," he meant Americans in general, but he was referring to Anglo-American legal history.

In *United States v. Wheeler*, the United States Supreme Court observed that, "Tribal laws and procedures are often influenced by tribal custom and can differ greatly from our own. Thus, tribal courts are important mechanisms for protecting significant tribal interests." 435 U.S. 313, 331-332 (1978) (citation omitted). There the Court referred to "our own" in the sense of non-Indian America. Because due process protections are a product of moral principles, and our own morality and tribal customs frame such principles in the Navajo way, we will give primacy to the Navajo Nation Bill of Rights, interpreted from a Navajo perspective. *Billie v. Abbott*, 6 Nav. R. 66, 74 (1988). This ruling leads in turn to our view of what constitutes "one's day in Court."

The rights protected in the Navajo Due Process Clause are fundamental, but they are not absolute, limitless, or unrestricted. They are considered in light of the enjoyment and protection of rights by all Navajos. We require that everyone coming before our courts have an opportunity to be heard at a meaningful time and in a meaningful way. That is the right to one's day in court. Navajo common law fully recognized this right, and it was exercised in family, neighborhood, and council gatherings where everyone had the opportunity to speak, and decisions were reached through consensus. We see this tradition preserved today in the chapter meeting, where disputes, plans, and chapter concerns are discussed at length.

Our rule is that each litigant shall have the opportunity to be heard at a meaningful time and in a meaningful way. When is a "meaningful time?"

Our rules and procedures provide for adequate notice of hearings to all concerned, and they set out requirements for giving parties notice of what the court will hear. This gives parties ample opportunity to obtain the assistance of counsel, gather evidence, and arrange for witnesses to attend. If a party can show the court legitimate reasons why there is insufficient time to prepare for hearing, that is a ground for arranging another "meaningful time." If a party cannot show the court good reasons for not preparing in the time allowed, that is a sufficient ground to deny a continuance. Put a different way, any party requesting a continuance must show the harm or prejudice which will result if the hearing or trial is held, as scheduled. No party can claim prejudice if the ability to prepare or raise claims was within his or her control, as here.

What is a "meaningful way?" If a party is allowed an opportunity to raise any claim he or she may have and the court allows an opportunity and procedure for doing so, that is sufficient. Here the parties had one full year in which to raise their claims.

The district court faced the difficult choice of having to balance the rights of the parties, then choose whose rights were more important. The court considered the appellant's need to prepare his defense as well as the appellee's right to be heard on her complaint. In balancing those rights the court properly found that Hugh Plummer had both ample time in which to find counsel for the hearing and ample opportunity to raise any and all of his claims in the prior probate proceedings.

In considering whether or not to grant a continuance a district court must:

1. Require the moving party to present a full statement of why he or she will be denied a fair hearing if the scheduled hearing or trial proceeds as scheduled. That statement (which we prefer to be in the form of a written motion with supporting affidavits, as needed) must show the court precisely how and why the party will be hurt, damaged, injured or prejudiced.
2. Require the opposing party to make the same showings.
3. Balance the rights of the parties as to comparative injury.

4. Consider whether it can grant some sort of relief to balance those rights, such as granting a recess to consult or a very short continuance of a day or two. The convenience of witnesses should be considered as a factor here.

At no time should a court permit a litigant to stall proceedings using the continuance rule, particularly where that party has had ample time to prepare, and an opportunity to be heard. The guiding principles should be the opportunity of the parties *and the court* to decide disputes in a meaningful way and at a meaningful time.

Due process rights, viewed as quasi-constitutional rights in our system as far as the Indian Civil Rights Act and Navajo Nation Bill of Rights are concerned, may be asserted only if one can show the denial of the right to an *opportunity* to be heard in a meaningful way. We must also remember that the Navajo common law is also our constitution, and claims under it are subject to considerations of the community good and Navajo perceptions of moral right.

Here there is no such moral claim. Hugh Plummer had ample opportunity to be heard and it is obvious he was attempting to use the court process to delay, yet again, his long-standing responsibility to remove his cattle from Bekisbah Plummer's grazing permit areas.

## III. THE BIA "DEMONSTRATION AREA" CLAIM

The district court record and transcript of proceedings are not clear about what a "BIA Demonstration Area" is and how the existence of one diminished the land rights of Bekisbah Plummer. It is important here only because the show cause hearing was in actuality a trespass action. The surviving spouse, Bekisbah Plummer, had the grazing permits through the probate decree, and she asked the court to remove a trespasser.

Ownership, with a right of possession, or a claim of a right of possession of land from another having ownership, is a defense to trespass. The trespasser or intruder must show justification for the act of trespass by virtue of his own title, and not any defect in the plaintiff's title. 75 Am. Jur. 2d *Trespass* § 40.

Hugh Plummer did not, so far as we can see in the record, claim he had any right or entitlement to the "BIA Demonstration Area" which purportedly existed within the grazing permit areas. He did not say he was grazing his cattle with the permission of whoever might have legal right to the area. He simply attacked the appellee's title, and that is not an adequate defense. Moreover, while he had his opportunity to raise the issue of a "BIA Demonstration Area" in prior proceedings, he did not do so.

The court allowed Hugh Plummer ample latitude to raise his claim at the show cause hearing, and it heard enough to be satisfied that he had the opportunity to do so previously.

In sum, Hugh Plummer was stalling, as he had been stalling and resisting removing his cattle from the beginning.

While Mr. Nez made every effort to carry out his ethical obligation to assert this client's claim in a competent manner, the court was correct in placing the blame for late-appearing counsel and for not hearing the claim squarely where it belonged — in the hands of Hugh Plummer.

In the future, we will require both counsel and courts to adhere to a Credo for lawyers written by Joseph Proskauer in 1928:

> I will neither make nor oppose interlocutory motions unless they are of real and practical importance.
>
> I will take no appeal unless I am satisfied that a substantial error has been committed and that a new trial should reasonably give a different result.

13 *N.Y. Co. Lawyers Ass'n. Bar Bull.* 146 (1956).

## IV. CONCLUSION

The judgment of the district court is affirmed, and this matter is remanded for enforcement of the order of September 6, 1989, with no further delay. That order was not stayed on appeal, and it is effective immediately.