NYGAARD, Circuit Judge,
concurring.
Although I concur in the holding that the District Court erred by dismissing the due process claim, I disagree that a remand to the District Court to consider the due process claim is warranted.[1] Indeed, while noting that “[t]he constitutionality of the levy procedure [section 7426] ... ‘has long been settled’ ” the Supreme Court specifically invited a review of the very legal question Scheafnocker now raises. United States v. National Bank of Commerce, 472 U.S. 713, 721, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985) (quoting Phillips v. Commissioner, 283 U.S. 589, 595, 51 S.Ct. 608, 75 L.Ed. 1289 (1931)).
The Supreme Court described the levy process as “an effective and inexpensive administrative remedy for the return of property.” National Bank of Commerce, 472 U.S. at 728, 105 S.Ct. 2919. Yet, in a crucial footnote, the Court also said the following.
We do not pass upon the constitutional questions that were addressed by the District Court, but not by the Court of Appeals, concerning the adequacy of the notice provided by § 6343(b) and § 7426 to persons with competing claims to the levied property. There is nothing in the sparse record in this case to indicate whether Ruby and Neeva Reves were on notice as to the levy, or as to what the *438 Government’s practice is concerning the notification of codepositors in this context. As the parties are free to address this issue on remand, the dissent’s concerns on this score ... are decidedly premature.
Id. at 728 n. 12, 105 S.Ct. 2919. In contrast to National Bank of Commerce, the record in this case does provide us with answers to factual questions unknown to the Supreme Court in that case.
Indeed, the controlling facts of this claim are not in dispute. First, the government admits that it levied the bank account that is at the center of this case. Second, as the government concedes, Scheafnocker sufficiently pleads an ownership interest in these levied funds: a property interest that invokes constitutional due process rights. Third, Scheafnocker states that she never received any notice from the government. Finally, the government admits that it never notified Scheafnocker of the levy. From this, it is clear that Scheafnocker has presented sufficient allegations to ground a claim that the levy was unconstitutional for purposes of procedural due process analysis. See Finberg v. Sullivan, 634 F.2d 50, 56 (3d Cir.1980). Indeed, I would hold that it is irrelevant whether the bank statements were sent to Scheafnocker. All they would indicate, after the fact and possibly too late to take action, is that someone had snatched the funds. It would not provide any information about the nature of the taking or the process that is available to challenge the levy. In contrast, a Notice of Levy is prospective in nature, alerting the co-owner that the government has taken control of assets and will convert them, absent objections. It would also inform the co-owner of the established procedure that is available to object to the levy.
In my view, all that remains here is a legal determination: whether the government’s failure to notify Joanne Scheafnocker of the levy violated her constitutional right to due process. I conclude that it does, and in the interest of judicial economy we should proceed to the merits of her claim.
With regard to the merits of this case, there is a clear facial contradiction between the government’s total failure to apprise Scheafnocker of the levy and the fundamental constitutional right to “ ‘notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.’ ” Nu-Look Design, Inc. v. C.I.R., 356 F.3d 290, 295 (3d Cir.2004) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). In the face of such a glaring incongruity, the government does not provide any legitimate reason for its practice. Its assertion that it is not authorized to notify non-taxpayer co-owners of the levy is incorrect. The wrongful levy process is set out in 26 U.S.C. § 7426 and 26 U.S.C. § 6343, separate from the levy process provisions, which delegate authority to the Secretary to make determinations about wrongful levy claims.[2] As a result, the most that can be said is that the statute is silent with *439 respect to the provision of notice to non-taxpayer co-owners about the levy and their right to challenge it.
The government also errantly argues that Congress expressed its intent to place the burden of discovering the levy upon the co-owner.[3] The government reasons that the nine-month statute of limitations applicable to the wrongful levy process, 26 U.S.C. § 6532(c), can be read to infer a Congressional intent to impose a burden of diligent oversight on the co-owner, rather than a duty of notice on the government, because nine months is long enough for a co-owner to discover the levy. See Dieckmann v. United States, 550 F.2d 622, 624 (10th Cir.1977). I do not find support for this inference and, moreover, I do not agree with it. Constitutional due process strictures may sometimes be onerous. That, however, does not empower the government to ignore them. “[I]t does not follow that the State may forego even the relatively modest administrative burden of providing notice by mail to parties who are [able to monitor their assets].” Mennonite Board of Missions v. Adams, 462 U.S. 791, 799-800, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).
The Supreme Court said the following in reference to notice by publication, a method of notice that at least requires a modicum of effort on the part of the government to provide information to stake holders.
“Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency.”
Schroeder v. City of New York, 371 U.S. 208, 212-213, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (quoting Mullane, 339 U.S. at 318, 70 S.Ct. 652). Such reasoning is all the more compelling in a circumstance such as this where the government is claiming that it does not have any affirmative duty to notify a co-owner of an asset it intends to take.
Indeed, the very fact that Congress explicitly crafted section 7426 as an exception to sovereign immunity demonstrates, in my view, a Congressional resolve that— even in light of the pressing need for a quick, efficient process to collect back taxes — the levy process would not run roughshod over legitimate property interests of non-taxpayer co-owners.[4] For these reasons, I would hold that the government’s position, reading the statute as eschewing any need or obligation to affirmatively provide notice of the levy to non-taxpayer co-owners, is constitutionally untenable.[5] Mindful that due process is a constitutional *440 guarantee, not a “legislative grace” (Arnett v. Kennedy, 416 U.S. 134, 167, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)), I read the statute as vesting the Secretary with the responsibility of deciding claims of wrongful levy in a manner that is consistent with all constitutional mandates, including notice. The statute, as written, does not run afoul of the constitution.
However, on the question of whether the government has implemented the statute in a manner that is consistent with constitutional guarantees, I conclude that it has not. The government relies upon comments to the regulation as authority for its current practice. Yet, from my review, the only definitive exclusion of notice to non-taxpayers is found in the regulations implementing section 6331, the tax levy process, where it states the following: “Q-Al. Who is the person to be notified under section 6330? A-Al ... A pre-levy or post-levy CDP [collection due process] Notice ... will be given only to the taxpayer.” 26 C.F.R. § 301.6330-1(a)(3). The regulations do not separately address the wrongful levy process, leading me to question whether, even here, any authoritative basis exists for the government to refrain from providing notice to non-taxpayer co-owners.[6] Nonetheless, taking the government’s argument at face value, I conclude for the reasons that follow that its implementation of the statute does not conform to the mandates of due process.
“[R]esolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected.” Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Specifically, three factors are examined.
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Id. at 335, 96 S.Ct. 893. Here, the first prong is satisfied because there is no real dispute that ownership of funds in a bank account is a property interest that is subject to constitutional due process protection. See, e.g., Finberg, 634 F.2d at 56.
Regarding the second prong, the facts of this case provide a patent demonstration of the danger created by the present wrongful levy scheme. Scheafnocker became aware of the levy fourteen months after it occurred, well after the statute of limitations for a wrongful levy claim had tolled. As a result, unsurprisingly, all of her subsequent attempts to challenge the levy were deemed barred. Scheafnocker, therefore, was not only deprived of the funds in her bank account as a result of the government’s levy, but also denied any *441 process by which the merits of her challenge to the levy could be heard. Because the government admits that it does not, and will not notify non-taxpayer co-owners of levied assets, the risk of erroneous deprivation is apparent and ongoing.
With respect to the third prong, the usual arguments employed against burdening the government’s tax collection efforts with additional procedural requirements are not applicable here. Notice would not hamper the government’s tax collection efforts in any way because, as noted in National Bank of Commerce, the levy process established in section 7426 is provisional. The levy itself does not vest the government with an ownership interest. Rather, it is an extraordinary measure — as an alternative to the normative judicial process — in which the government wrests control of the asset from the taxpayer to prevent any subterfuge that would place the property out of the reach of the government. The disposition of ownership of the asset is not conclusively determined until after the period for a wrongful levy challenge has expired. National Bank of Commerce, 472 U.S. at 721, 105 S.Ct. 2919. Therefore, providing notice to co-owners that their property has been provisionally seized under emergent circumstances would not delay the levy, nor would it forestall the date upon which the time bar for a wrongful levy closes, because the statute of limitation to challenge the levy runs from the date of the levy. 26 U.S.C. § 6532(c).
For all of these reasons, and with all three prongs of the Mathews analysis satisfied, I conclude that both governmental and public interests support a holding that the administrative procedures at issue here are constitutionally infirm. The failure of the Internal Revenue Service to provide any notice of the levy to Joanne Scheafnocker, a non-taxpayer co-owner of property levied pursuant to section 6331, violated her constitutional right to due process.
Lastly, the government argues in the alternative that, even if the lack of notice is a constitutional violation, Scheafnocker’s delay in filing her complaint before the District Court eliminates any argument that her claim was timely. This is, essentially, a harmless error argument.
The government notes that, in the Taxpayer Advocate’s denial of Scheafnocker’s original request for assistance, there was notice of her right to appeal to the District Court, along with a recitation of the statutes dictating the time-frame in which this appeal must be filed. Scheafnocker, instead, filed her appeal with the Tax Court. It was only after the Tax Court dismissed her appeal that she filed a complaint with the District Court. This filing occurred outside of the statutory time limit, even if the date on which the statute began to run is calculated from the day on which she filed the Taxpayer Assistance Order, IRS Form 911, with the Taxpayer Advocate. 26 U.S.C. § 6532(c). The government argues, as a result, that Scheafnocker cannot claim that she suffered any harm from the original lack of notice.
The fundamental problem with this argument, however, is that the government’s original failure to give Scheafnocker timely and appropriate notice of the levy prevented her from receiving any review or hearing on the merits of her wrongful levy claim. Therefore, the after-the-fact notice of her appeal options that she received in the Tax Advocate’s denial of her claim is of no consequence to our analysis. Her claim was already fatally undermined by the statute of limitation, a point that was made clear by the decision of the District Court. Given the centrality of the lack of notice to the subsequent failure of her wrongful levy claim, an error that precluded any review *442 of Scheafnocker’s claim on the merits, this constitutional violation cannot now be deemed harmless. See Loui v. Merit Systems Protection Board, 25 F.3d 1011, 1014 (Fed.Cir.1994).
For all of these reasons, I would vacate the decision of the District Court and remand this cause for a hearing on the merits of Joanne Scheafnocker’s wrongful levy-claim.

. I would remand for different reasons. See infra.

. "If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy ... (d) Requirement of notice before levy. — (1) In general.— Levy may be made under subsection (a) upon the salary or wages or other property of any person with respect to any unpaid tax only after the Secretary has notified such person in writing of his intention to make such levy.” 26 U.S.C. § 6331. The lack of mention of notice to non-taxpayer co-owners is not, of itself, evidence of a Congressional intent to withhold authority to notify such parties.

. "(c) Suits by persons other than taxpayers. — (1) General rule. — Except as provided by paragraph (2), no suit or proceeding under section 7426 shall be begun after the expiration of 9 months from the date of the levy or agreement giving rise to such action. (2) Period when claim is filed. — If a request is made for the return of property described in section 6343(b), the 9-month period prescribed in paragraph (1) shall be extended for a period of 12 months from the date of filing of such request or for a period of 6 months from the date of mailing by registered or certified mail by the Secretary to the person making such request of a notice of disallowance of the part of the request to which the action relates, whichever is shorter.” 26 U.S.C. § 6532.

. See also Terrell v. C.I.R., 625 F.3d 254, 257 (5th Cir.2010) (Internal Revenue Service must use "reasonable diligence” to provide notice to "innocent spouse” of opportunity to appeal denial of relief from an assessment.).

. Where differing interpretations of a statute are possible, we must read it to preserve its constitutionality. Forum for Academic and Institutional Rights v. Rumsfeld, 390 F.3d 219, 229 n. 8 (3d Cir.2004); see also Rust v. Sullivan, 500 U.S. 173, 190, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991).

. Although the official comment to the regulation narrows notice of the levy only to taxpayers, we note that the regulations are, at best, ambiguous on co-owners of levied assets. Beyond the taxpayer, the only persons explicitly discussed in the regulations are "known nominees of, persons holding property of, or persons holding property subject to a lien with respect to, the taxpayer.” See 26 C.F.R. § 301.6330-1 (a)(3)(Q-A2, A-A2; Q-B5, AB5). The regulations make clear that these persons will not receive either notice or any due process hearing. Id. While the affirmative statement in A-Al of the regulation delineates who will receive notice, the complete failure of the regulations to affirmatively and specifically reference co-owners of levied assets, or to cross-reference section 7426, is a lacuna that casts doubt on whether the rights of co-owners were considered when the procedures were constructed.