## WILLIAMS v. AMERICAN FOREIGN STEAMSHIP CORPORATION.

District Court, S. D. New York.
Oct. 16, 1945.

Nathan Baker, of Hoboken, N. J., for plaintiff.

Corydon B. Dunham, of New York City, for defendant.

TIMMERMAN, District Judge.

It seems to me that it is conclusively established in this case that the Government was the owner of the Steamship Thomas R. Marshall. It is conclusively established, it seems, that the defendant in this case had some connection with that ship by virtue of a paper executed by and between the defendant and the War Shipping Administration, and which is entitled "Service Agreement for Vessels of Which the War Shipping Administration is Owner or Owner pro hac vice."

The contract, as I read its terms, makes the defendant the agent of the War Shipping Administration, and specifically states that the defendant is not an independent contractor respecting the vessel in question. This contract enumerates some duties which were being performed by the defendant as agent for the War Shipping Administration. Generally speaking, it seems to require that the agent will assume the obligation of seeing that the ship is in proper maintenance and order to go to sea; that it is properly provisioned. It also requires the agent to procure the master of the vessel, not in accordance with the agent's own independent judgment, but subject to the approval of the United States. That seems to have been done.

The agreement also provides that the master, when so procured, and accepted by the United States, shall become an agent and an employee of the United States and shall have and exercise full control, responsibility, and authority with respect to the navigation and management of the vessel. That to my mind implies that the agent, the defendant in this case, is excluded from participation in the navigation and management of the ship.

██ It is inconceivable to me that the Government, owning the ship and using it for its wartime purposes, would authorize one of its agents, to wit, the master or captain of the ship to have control, responsibility, and authority for the ship's navigation and management and at the same time intend to give the same powers and authorities over the same ship to another and independent agent. Therefore I think the contract, as stated above, excludes the shipping agent, the defendant in this case, from any authority over the navigation and management of the vessel. The contract does, however, authorize, and I presume require, the general agent to procure and make available to the master of the ship, the one who is designated as an agent and an employee of the United States, for engagement by him the officers and men required by him, that is, the master of the ship, to fill the complement of the vessel.

I do not think that that language is susceptible to the inference that it was intended by the contracting parties that the general agent should furnish its own officers and crew members to man and operate the ship. In fact, the general agent was not even given the authority to employ such officers and crew members. That authority by contract was vested in the master of the ship, an agent or employee of the United States. That construction is borne out by

the shipping articles, which to me appear to be a contract between the master, the agent of the United States for that purpose, and the individual members of the crew. Certainly they are the ones who signed them. The defendant, the general agent, did not sign them. While the shipping articles which bear the title in large letters at the top "United States Coast Guard Shipping Articles" does refer to the defendant as "Operating Company on the voyage" it does not show that said corporation signed that contract or bound itself in any respect contrary to the terms expressed in the service agreement which it did sign as one of the makers. The shipping articles executed on the one part by the master of the ship as agent of the United States and on the other part by the crew members, one of whom was the plaintiff, binds the parties thereto, that is the seamen, to obey the directions of the master of the ship and of the United States Government, or any department, commission, or agency thereof, and it nowhere binds them to obey the orders or directions of the defendant.

The following language is also found in the shipping articles signed by the master, as agent for the United States, and the members of the crew, to wit, "It is also agreed that this contract is subject to the provisions of the Maritime War Emergency Board decisions including operations, regulations 64 & 72."

It certainly cannot be considered that the Maritime War Emergency Board is an agency or arm of the defendant. The Court will take judicial notice of the fact that it is a governmental agency; nor do the regulations referred to as 64 and 72 lend any color to the contention that the members of the crew of the S.S. Thomas R. Marshall were agents, officers, employees, or servants of the defendant. The plaintiff alleges that they are, but it appears to me the undisputed proof in the case is that they are not.

It follows therefore that if the master, the other officers, and the seamen of the S.S. Thomas R. Marshall were not either agents, employees or servants of the defendant, any negligence on their part or on the part of any one or more of them cannot be attributed to this defendant, whether or not such negligence caused the injury to the plaintiff.

While the complaint alleges in effect, as I now recall, that the S.S. Thomas R. Marshall was defective, unsafe, and unseaworthy there is no testimony to sustain that charge. In fact, there is no testimony tending to establish negligence as the cause of the plaintiff's alleged injury, except the alleged condition of permitting, allowing, or placing grease on the seat or floor of a lifeboat of said vessel, sometimes referred to as the motor launch. There is not the slightest evidence that the defendant turned the ship over for sailing in any such condition. The only inference that can be drawn from the testimony is that if there was oil on the seat of the motor launch or lifeboat it must have been placed there some considerable time after the defendant had lost all control over it. Admittedly the ship had been in several ports and it had been used a number of times after the defendant lost all control over its operation and management. I am of the opinion, from all of the evidence, that the defendant did not have the right of control over the vessel in question or that it pretended to have that right, or that it actually exercised any such right of control after it had sailed in convoy sometime prior to the date of plaintiff's alleged injuries, perhaps about a month before. I realize, of course, that the mere fact that the defendant was an agent of the Government would not relieve it of liability for any negligent act committed by it or by persons acting for and in its behalf which might cause injury to another, but I do hold that an agent for a principal, by reason of that relationship, does not become liable for the tortious acts of another agent of the same principal. The plaintiff is presumed to have known with whom he was contracting when he signed the shipping articles, and if he did he would know that he was not signing a contract with the defendant. Aside from that he testified that the shipping articles were posted aboard the ship and that they were available to him. One cannot deny knowledge of the fact which his duty requires him to know

when he has the opportunity of knowing, simply because he closes his eyes and refuses to open them to see what he should see.

The plaintiff's testimony perhaps states a claim against the United States that is or was compensable, but I do not think his testimony sustains such claim against the defendant in this case for the reasons stated and others that might be stated, which are as clearly obvious as the ones stated. The motion will be granted. Defendant's motion will be granted.