## BOHANNON v. AMERICAN PETROLEUM TRANSPORT CORPORATION.

United States District Court
S. D. New York.

Nov. 9, 1949.

George J. Engelman, New York City, for plaintiff.

Barry, Wainwright, Thacher & Symmers, New York City, Joseph M. Brush, New York City, of counsel, for defendant.

IRVING R. KAUFMAN, District Judge.

The plaintiff brought this action against the defendant under the Jones Act, 46 U.S. C.A. § 688, for the recovery of damages for personal injuries occasioned by the alleged negligence of the defendant, and for the cost of his maintenance and cure. At the outset of the trial the defendant moved to dismiss the complaint on the ground that being a general agent under the war-time standard form of agency agreement there was no liability on its part to the plaintiff, and that the proper defendant was the United States of America.

Prior to the taking of evidence on the negligence phase of the case, a preliminary hearing was conducted by the Court on this question; at this hearing certain exhibits were introduced in evidence and certain facts stipulated.

The disposition of the motion presents the following question: Can a general agent who services a vessel under the terms of the war-time standard form of agency agreement be held liable under the Jones Act, as the employer, for injury to a member of the crew employed as a seaman aboard the vessel, if such agency is not disclosed to the seaman.

Plaintiff in this action, an infant, was a seaman employed aboard the tanker "Four Lakes" during December of 1947, and was injured on the 19th day of that month when a wave, which swept over the forward main deck of the vessel, knocked him down. Plaintiff brings this action under the Jones Act to recover for these injuries, alleging that they were occasioned by the negligence of the defendant in failing and neglecting to provide him with competent superiors and coemployees. The defendant in addition to denying the alleged negligence on its part, asserts in bar that it was a general agent in accordance with the terms of the general agency agreement between it and the United States of America acting through the Administrator, War Shipping Administration, and his successor, the United States Maritime Commission.

It was conceded at the preliminary hearing that at the time of the accident the tanker was owned by the United States of America and serviced by defendant, American Petroleum Transport Corporation, under the terms of the standard general agency agreement (Federal Register, 46 C F R, Cum.Supp., Sec. 306.44). The agreement in this case [1] is similar in all respects to those considered by the Supreme Court in Cosmopolitan Shipping Co. v. McAllister, 1949, 337 U.S. 783, 69 S.Ct. 1317; Weade v. Dichman, Wright & Pugh, Inc., 1949, 337 U.S. 801, 69 S.Ct. 1326; and Fink v. Shepard Steamship Co., 1949, 337 U.S. 810, 69 S.Ct. 1330.

In the McAllister case, supra, the Supreme Court held that the United States Government and not the general agent, was the employer of a seaman working under such an agreement.

Plaintiff seeks to distinguish the McAllister, Weade and Fink cases on the ground that in those cases, the agency was disclosed to the injured seaman, and it claims that there was no such disclosure in this case. As a result of this absence of disclosure, the plaintiff contends that the general agent can be sued as the employer under the common-law agency rules concerning undisclosed principals.

The remedy which the plaintiff has sought in his complaint in the instant case is purely statutory. It inures to the benefit of an employee against an employer under the Merchant Marine Act of 1920, Section 33, known as the Jones Act and so referred to above and hereinafter. 41 Stat. 1007, 46 U.S.C.A. § 688 (1946).

Plaintiff's action is not based upon common-law negligence, nor upon rules of private agency. The Jones Act discloses on its face that the seaman may take advantage of the provisions of that Act, only against his employer. See McAllister case, 337 U.S. at page 787, 69 S.Ct. 1317, at page 1320, footnote 6. As to this the court stated in the McAllister case, 337 U.S. at page 791, 69 S.Ct. at page 1322: "We have no doubt that, under the Jones Act, only one person, firm, or corporation can be sued as employer. Either Cosmopolitan [2] or the Government is that employer. The seaman's substantive rights are the same whoever is the employer."

It is evident from this language that the remedies afforded the seaman by the Jones Act are statutory and can only be exercised against the party who in fact is the employer. See Steele v. American South African Line, D.C., N.D.Cal.1945, 62 F.Supp. 636, 638. It does not seem material that the name of the employer may not have been revealed to the seaman at the time of hiring; his rights in the light of the McAllister case cannot be enlarged, simply by characterizing the general agent as an employer, when in fact the general agent was not the employer.

The McAllister case sets out the test to be applied to determine who is the actual employer, for the purposes of the Jones Act. There the court said: "No single phrase can be said to determine the employer. One must look at the venture as a whole. Whose orders controlled the master and the crew? Whose money paid their wages? Who hired the crew? Whose initiative and judgment chose the

---

1. Defendant's Exhibit A in evidence.

2. The general agent in that case.

route and the ports? It is in the light of these basic considerations that one must read the contract." 337 U.S. at page 795, 69 S.Ct. at page 1323.

It is apparent that the Supreme Court was posing an objective test, to determine who stood in the employer-employee relationship, and would not predicate liability on the basis of who the seaman believed was his employer.

An examination of the general agency agreement in this case makes clear the following: That the general agent was merely an agent, not an independent contractor (Article 1); that the general agent accepted the appointment and undertook and promised to manage and conduct the business for the United States in accordance with the directions, orders and regulations of the United States (Article 2); that the general agent agreed to maintain the vessels in such trade or service as the United States may direct, subject to its orders as to voyages, cargoes, and all matters connected with the use of the vessel (Article 3A); that the general agent agreed to equip, victual, supply and maintain the vessels subject to the directions, orders, regulations and methods of supervision and inspection of the United States (Article 3A(c); that the general agent agreed to procure a master of the vessel subject to the approval of the United States, and that the master would be an agent and an employee of the United States; that the officers and members of the crew procured would be paid in the customary manner with funds provided by the United States (Article 3A(d); that the general agent agreed to furnish a bond with sufficient surety to the United States to be conditioned upon the due and faithful performance of all the covenants and agreements under the general agency agreement (Article 3B(c).

The entire tenor of this general agency agreement was intended to and did in fact reserve to the United States of America the full right of ownership and operation of the vessel.

■ Furthermore, under the general agency agreement, the master as an employee of the United States hires the officers and the crew, and the general agent merely renders assistance in expediting the hiring. See Williams v. American Foreign Steamship Corp., D.C.S.D.N.Y.1945, 65 F.Supp. 900.

■ While the question of fact as to disclosure of the agency need not be decided, it is difficult to envisage a situation in which a seaman would not have some form of notice of the agency status of the general agent. It was a matter of common knowledge that the Government was operating the war-time Merchant Marine. If the plaintiff did not know that this situation existed, numerous evidentiary factors coincidental with Government ownership and operation, should have made him aware that it did exist. Furthermore, if the plaintiff did not have actual notice of ownership, he must be charged with constructive notice. Both plaintiff and defendant were governed by the war-time statutes, Presidential orders and War Shipping Administration regulations. The standard form of general agency agreement (GAA 4-4-42) is a matter of public record. Federal Register, 46 C F R, Cum.Supp. Sec. 306.44. Only documents having general applicability and legal effect are published in the Federal Register, Federal Register Act, 1935, 49 Stat. 500, 44 U.S.C.A. § 305(a), and such publication is sufficient to give notice of the contents of such document to any person, subject thereto, or affected thereby. Federal Register Act, 44 U.S.C.A. § 307; Federal Crop Insurance Corp. v. Merrill, 1947, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10, 175 A.L.R. 1075; Peoria Braumeister Co. v. Yellowley, 7 Cir., 1941, 123 F.2d 637. This is so "regardless of actual knowledge * * * or of the hardship resulting from innocent ignorance." Federal Crop Insurance Corp. v. Merrill, 332 U.S. at page 385, 68 S.Ct. at page 3. Since constructive notice of matters of public record is deemed equivalent to actual notice, W. A. H. Church, Inc., v. Holmes, 1931, 46 F.2d 608, 60 App.D.C. 27, the matter of disclosure in the instant case is of no moment.

■ The plaintiff contends that certain rights were taken from him by reason of the alleged non-disclosure of the actual

principal, which he did not voluntarily relinquish. However, this does not affect the decision in this case. Indeed, other rights were taken from the plaintiff, despite non-disclosure of the principal. Direct governmental operation insured the merchant fleet the benefits of sovereign immunity. For example, the plaintiff, whether with his knowledge or not, relinquished his right to strike while working on the "Four Lakes" since strikes and work stoppages were not permitted against the Government as owners of the vessel. It must be apparent that the lack of knowledge of ownership would not have been a sufficient justification for a strike.

It is apparent that no hardship will result to plaintiff by reason of the holding that he cannot sue the general agent under the Jones Act which grants a remedy only against the employer, who, in this case, is the United States and not the defendant. There is now pending in the Admiralty side of this Court a suit instituted by this plaintiff against the United States of America, so that any rights which plaintiff may have to recover for the injuries which he sustained will not be destroyed by a dismissal of this suit against the defendant, general agent.

The second cause of action for maintenance and cure, being dependent as is the first cause of action, upon the existence of a true employee-employer relationship, must likewise fall.

Accordingly, the motion of the defendant to dismiss the complaint is granted.