The COVELO INDIAN COMMUNITY, Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

CALIFORNIA TROUT, INC., Petitioner,

v.

FEDERAL ENERGY REGULATORY COMMISSION, Respondent,

Pacific Gas and Electric Company; Mendocino County, California; County of Sonoma; Sonoma County Water Agency, Respondents–Intervenors.

Nos. 87–7116, 87–7118.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 10, 1989.

Decided Feb. 2, 1990.

Stephen V. Quesenberry, Virginia Dario Elizondo, and Lester J. Marston, California Indian Legal Services, Oakland, Cal., for petitioner, Covelo Indian Community.

Gregory A. Thomas and Michelle T. Leighton, Sausalito, Cal., for petitioner, California Trout, Inc.

Catherine C. Cook, Jerome M. Feit, and Joseph S. Davies, Washington, D.C., for respondent F.E.R.C.

Howard V. Golub, Jack F. Fallin, Jr., and Alice L. Reid, San Francisco, Cal., for intervenor, Pacific Gas and Elec. Co.

James P. Botz, Santa Rosa, Cal., and George A. Avery, Washington, D.C., for intervenor, Sonoma County and Sonoma County Water Agency.

H. Peter Klein and Sandra L. Applegate, Ukiah, Cal., for intervenor, County of Mendocino.

David C. Etheridge, Roger J. Marzulla, Anne S. Almy, and Blake A. Watson, Washington, D.C., for the U.S. as amicus curiae.

Before SKOPIL, FARRIS and HALL, Circuit Judges.

PER CURIAM:

The Covelo Indian Community (the "Community"), a federally recognized Indian Tribe, and California Trout, Inc. ("Cal Trout"), a private fishing organization, seek review of the Federal Energy Regulatory Commission's ("FERC") decision to relicense a private utility's hydroelectric project in Northern California. FERC has moved to dismiss the petitions for lack of appellate jurisdiction, contending that (1) the Community was denied intervenor status and hence may not seek judicial review of the merits of the agency's order; and (2) Cal Trout failed to timely seek rehearing from the agency's decision on the merits and thereby preserve its objections for judicial review. We agree with FERC's contentions and conclude that our jurisdiction in this case is limited to determining whether the agency abused its discretion in denying the Community's motion to intervene. We find no abuse of discretion and therefore we dismiss the petitions.

## FACTS AND PRIOR PROCEEDINGS

On May 1, 1970 Pacific Gas & Electric Company (PG & E) filed an application with the Federal Power Commission, now FERC, to renew its license to operate the Potter Valley hydroelectric project on the upper Eel River in California. Electrical power is generated by diverting water from the Eel River across a natural divide to a powerhouse on the East Fork Russian River. The project also provides for summer irrigation of Potter Valley and has spawned development along the length of the Russian River.

Various groups with concerns about the allocation of water between the Eel and Russian Rivers responded to PG & E's relicense application. During the long renewal process, three fishing organizations were granted intervenor status. The California Department of Fish and Game (CDF & G), Humboldt County, Mendocino County, Sonoma County, and Lake County were also granted the right to intervene. Generally, the fishing groups sought to improve fishery resources of the Eel River. Sonoma County was determined to maintain the historic project flows along the Russian River. Humboldt County, on the other hand, sought to modify the diversion and thereby enhance the Eel River for recreational and fishery users. Mendocino County, which contains portions of both the Eel and Russian Rivers, sought to maintain the availability of irrigation water. CDF & G was specifically interested in enhancing fishery resources. PG & E, of course, sought to preserve the project's electrical output and to maintain the downstream benefits created by the project's existing water flow.

Following an investigation, FERC issued a Draft Environmental Impact Statement. A number of the intervenors submitted comments, focusing primarily on the adequacy of water flows in the Eel River. The Department of Interior ("Interior"), although not an intervenor, submitted comments criticizing FERC's proposed water flows down the Eel River, challenging the respective estimates of power loss and po-

tential fisheries gain, and questioning the efficiency of the project's fish screens. After considering the various comments, FERC filed a Final Environmental Impact Statement on December 21, 1978.

During this time FERC also conducted settlement conferences focusing on the allocation of water between the Eel and Russian Rivers. When those conferences proved unsuccessful, FERC held a prehearing conference to "investigate the proper allocation of water between the Eel and Russian River systems and determine if it would be appropriate to increase the current minimum flow in the Eel River from the Van Arsdale reservoir." (Unpublished Order Establishing Hearing and Requiring Prehearing Conference—July 5, 1979). That conference produced an offer from PG & E to increase water flows into the Eel River for a three-year period to allow study of the effects on downstream fishery resources. The various parties agreed to that study, and on November 1, 1979, an administrative law judge ("ALJ") entered an order approving the interim agreement.

During the next three years, a PG & E consultant studied the effects of increased water flows into the Eel River system. Monthly reports were submitted to all parties, and the parties' technical representatives met periodically to analyze the data and to suggest flow modifications. Near the end of the study, settlement conferences were again held. After the final study report was prepared, most of the parties, including all of the counties affected by the water flows of the two rivers, reached a tentative agreement on the terms of a final settlement. The ALJ thereafter scheduled a conference to allow each party the opportunity "to explain in detail its position as to a reasonable ... flow schedule."

Shortly before this conference, the Community sought to intervene in the relicensing proceedings, contending that it had not received notice of the relicensing proceedings and that its unique legal interests in water and fishery resources were not represented by other parties. The Community's request was opposed by several parties

who questioned the Community's lack of notice of the highly publicized proceedings and argued that the Community's late intervention would substantially prejudice the settlement. The ALJ nevertheless conditionally granted the Community's petition, ruling that the Community would be permitted full intervention rights only if the pending settlement did not occur before November 30, 1982, and even then, only to address the fishery conditions on the Eel River.

On November 30, 1982 six of the nine parties executed a settlement providing for (1) a complex schedule of water releases designed to promote the Eel River anadromous fishery; (2) capital improvements to the project; and (3) a review of water flow requirements after ten years. The three fishing groups declined to join the settlement. One of these groups, Cal Trout, filed objections to the settlement, especially to the "open-ended article in regard to the fishery," and requested that FERC hold an evidentiary hearing. The Community, although denied full party status, was nevertheless allowed to submit comments on the settlement. The Community argued that the settlement should not be approved without (1) hearings or other procedures to ensure adequate consideration of all fishery issues; (2) Interior's final recommendations; and (3) resolution of material issues of fact regarding the long-term effect of the proposed water flows on the Community's water and fishing rights.

On May 3, 1983 the ALJ issued a decision certifying the contested settlement to FERC for its review and approval, denying the Community's request for intervenor status, and refusing to consider a supplemental report submitted by Interior. 25 F.E.R.C. ¶ 63,050 (1983). The Community appealed the ALJ's denial of its petition to intervene. Several months later, FERC denied the Community's appeal, approved the contested settlement without a hearing, and issued a new fifty-year license to PG & E. 25 F.E.R.C. ¶ 61,010 (1983). Both the Community and Cal Trout filed for rehearing. The Community's timely petition was denied. 25 F.E.R.C. ¶ 61,334 (1983). Cal Trout's petition was untimely and denied on that ground. *Id.*

The Community appealed FERC's decision to this court but, prior to briefing, FERC sought and obtained a remand to allow it to clarify its order. *See Covelo Indian Community v. FERC,* No. 84–7063 (9th Cir. Apr. 16, 1984) (Order Granting Remand). On remand, Interior filed a request to intervene late, contending that it did not "intervene sooner because it had a right to assume that the Community would be fairly treated in the proceedings without Interior's involvement and because Interior need not intervene to carry out its statutory role under the FPA." FERC issued an Order on Remand on October 16, 1986 that affirmed its earlier order denying the Community's intervention and also denied Interior's motion to intervene. 37 F.E.R.C. ¶ 61,019 (1986). FERC thereafter dismissed Cal Trout's and the Community's timely filed petitions for rehearing on the grounds that Cal Trout attempted to raise issues beyond the scope of the remand and the Community was not a party to the proceedings. 38 F.E.R.C. ¶ 61,200 (1987). Both Cal Trout and the Community timely petitioned for judicial review.

## DISCUSSION

### 1. Jurisdiction

Jurisdiction in this case is governed by section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l* (b) (1982), "which provides that any person aggrieved by an order of FERC may obtain review in the court of appeals." *The Steamboaters v. FERC,* 759 F.2d 1382, 1387 (9th Cir.1985). We have interpreted the statute to provide that two events must occur before we may review an order or decision issued by FERC. "First, the party aggrieved by an order issued by FERC must seek a rehearing before FERC of that order within thirty days. Second, the aggrieved party must file a petition for review in this court within sixty days after the final order of FERC upon application for rehearing." *Sierra Ass'n for Env't v. FERC,* 791 F.2d 1403, 1406 (9th Cir.1986). FERC contends that neither Cal Trout nor the Community has satisfied the jurisdictional prerequisites of section 313(b).

### a. Cal Trout

█ Cal Trout failed to timely petition for review of FERC's approval of the contested settlement and issuance of PG & E's relicense, and did not seek judicial review of FERC's refusal to accept an untimely petition. Cal Trout did, however, timely petition for review of FERC's Order on Remand. That petition was rejected by FERC, however, because Cal Trout did not address the issues resolved in the Order on Remand, but instead raised issues relating to the substance of the agency's relicensing order. 38 F.E.R.C. ¶ 61,200 (1987). The Commission reasoned that Cal Trout failed to seek timely rehearing of the initial relicensing decision and "may not do so now under the guise of filing a request for rehearing of the order on remand." *Id.* at p. 61,652. We agree with FERC's reasoning. "The language of 16 U.S.C. § 825*l* does not permit the intertwining of orders for review purposes, that is, using a timely petition to review an order for which the time limitations have run." *Sierra*, 791 F.2d at 1407.

Cal Trout argues, however, that FERC's request to this court for a remand was an intervening act which should have the effect of reopening the licensing proceeding and allowing Cal Trout to renew its challenge to the settlement and license. Cal Trout relies on *Cities of Campbell v. FERC*, 770 F.2d 1180 (D.C.Cir.1985). In *Campbell*, however, FERC's intervening act was to agree to reconsider its prior decision and stay its effect. *Id.* at 1184. The court concluded that "by granting reconsideration of that entire order, the Commission made clear that its administrative decision making process was still ongoing, that no final decision had yet been made, and that no rights or obligations of either party had been fixed for the interim." *Id.* (emphasis omitted).

Here, FERC's intervening action—a motion for voluntary remand—sought to correct "inadvertent error [in] its orders in this case [that] do not correctly reflect its position in regard to certain key legal issues." Cal Trout argues that FERC's motion should not be interpreted as a request for a limited remand but rather as a license for FERC to review, revise, or vacate any or all of its relicensing order. FERC ultimately explained, however, in its Order of Remand that it sought only to clarify that section 4(e) of the Federal Act Power, 16 U.S.C. § 797(e), pertaining to licenses "issued within any [Indian] reservation," was not applicable to this administrative proceeding. 37 F.E.R.C. at p. 61,043.

We understand that in some cases, issues that might have been raised in a prior appeal are so inextricably linked to a subsequent agency decision that these issues may be raised in a timely appeal from the second decision. *See, e.g., Kansas Cities v. FERC,* 723 F.2d 82, 85–86 (D.C.Cir.1983); *Cities of Batavia v. FERC,* 672 F.2d 64, 72 n. 15 (D.C.Cir.1982). We conclude, however, that this is not such a case. While FERC's motion for voluntary remand may have been better drafted so as to preclude argument over its scope, it is clear that FERC did not in fact reconsider the relicensing decision or open the door to reconsideration by issuing its Order of Remand. Under those circumstances, we agree with FERC that Cal Trout is precluded from " 'intertwining' ... orders for review purposes, that is, using a timely petition to review an order as a means of bringing before us a related order for which the appeal period has run." *Tiger Int'l, Inc. v. Civil Aeronautics Bd.,* 554 F.2d 926, 931 (9th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 532, 54 L.Ed.2d 467 (1977). Accordingly, Cal Trout's petition for review of FERC's relicensing order is dismissed. *See id.* at 932 (dismissing petition for lack of subject matter jurisdiction).

### b. Covelo Indian Community

█ Section 313(b) provides that "[a]ny *party ...* may obtain a review." 16 U.S.C. § 825*l* (b) (emphasis added). FERC contends that the Community was never a party in the proceedings. We agree. The Community was granted only a conditional right to participate in the administrative proceedings. When FERC issued the relicense, it also denied the Community's motion to intervene, thereby denying the Community party status. Thus, the Communi-

ty is not a party eligible to seek rehearing or judicial review of the merits of the relicensing decision.

■ Nevertheless, it is clear that we do have jurisdiction to consider whether the Community was wrongfully denied party status. "It would be grossly unfair to deny judicial review to a petitioner objecting to an agency's refusal to grant party status on the basis that the petitioner lacks party status. Such a petitioner must obviously be considered a party for the limited purpose of reviewing the agency's basis for denying party status." *Northern Colo. Water Conservancy Dist. v. FERC*, 730 F.2d 1509, 1515 (D.C.Cir.1984). Thus, our review in this case is limited to FERC's denial of the Community's motion to intervene.

### 2. Community's Right to Intervene

Twelve years after PG & E filed for relicensing and while settlement negotiations were underway, the Community sought to intervene to protect its fishing and implied water rights on the Eel River. The Community seeks to downplay its tardiness by arguing that publication notice was inadequate because of the Community's isolation and lack of awareness of its legal rights. The Community contends that FERC owed it actual notice of the relicensing proceedings for two reasons: (1) the fiduciary relationship between the United States and the Community, and (2) the due process clause of the fifth amendment. We conclude that even if the repeated public notice in the Federal Register did not provide actual notice to the Community,[1] FERC was not required to mail a special notice to the Community.

### a. Fiduciary relationship

■ As an agency of the federal government, FERC is subject to the United States' fiduciary responsibilities towards Indian tribes. *See Nance v. EPA*, 645 F.2d 701, 711 (9th Cir.), *cert. denied*, 454 U.S.

1081, 102 S.Ct. 635, 70 L.Ed.2d 615 (1981). The same trust principles that govern private fiduciaries determine the scope of FERC's obligations to the Community. *See Assiniboine and Sioux Tribes v. Board of Oil and Gas Conservation*, 792 F.2d 782, 794 (9th Cir.1986). According to these principles, FERC did not owe the Community actual notice of the PG & E relicensing proceeding. Although a trustee has a general "duty to inform the beneficiary of important matters concerning the trust," G. Bogert & G. Bogert, *The Law of Trusts and Trustees* § 961, at 3 (1983), that duty does not specifically require that the trustee inform the beneficiary of the pendency of every transaction and event that might affect the trust. The trustee must always act in the interests of the beneficiaries, but need not seek approval for every move that is made.

■ FERC met this standard. The Community's fishing and water rights are enhanced by the proposed increased flows of the Eel River. FERC recognized that the Community's implied water rights, when and if adjudicated in federal court, might necessitate additional flows. 25 F.E.R.C. at p. 61,055. For that reason, FERC included in the license a provision that allows reconsideration of the Eel River flow if the Community judicially establishes its water rights. *Id.* Thus, the one interest unique to the Community—implied water rights— was segregated and reserved for future consideration.

■ Even if FERC owed the Community actual notice of the relicensing proceedings, its failure to provide this notice is not by itself sufficient to warrant the Community's late intervention. Under FERC's regulations, "good cause" for failing to file a timely motion to intervene was only one of three factors to be weighed when considering whether late intervention should be allowed. *See* 18 C.F.R. § 385.214(d)(1)(i) (1983). The agency additionally had to consider whether late intervention would dis-

---

1. The Community claims that it did not have actual notice until August 4, 1982, just ten days before its application for intervention was made. We must say that in our minds the Community's claim is doubtful. The extensive

local press coverage, especially before and during the three year flow study, should have provided the Community actual notice of the pendency of the proceedings.

rupt the proceedings, and cause undue prejudice or additional burden to the existing parties, *id.* at (ii)–(iii). Because the Community's motion to intervene came as the parties were entering a final settlement agreement—following protracted hearings, studies, and negotiations—late intervention obviously would have disrupted the proceedings. Courts are understandably reluctant to force agencies to prolong proceedings for latecomers. *See, e.g., Easton Utils. Comm'n v. Atomic Energy Comm'n,* 424 F.2d 847, 852 (D.C.Cir.1970) (agency proceedings are not "endurance contests modeled after relay races in which the baton of proceeding is passed on successively ... to a newly arriving legal stranger"). Moreover, we agree with FERC that the Community's late intervention would have unduly burdened the other parties who had participated in the settlement process, including those parties seeking increased water flows on the Eel River. For these reasons we conclude that FERC did not abuse its discretion in denying the Community's late request to intervene. *Cf. County of Orange v. Air Cal.,* 799 F.2d 535, 539 (9th Cir.1986) (review of denial of Rule 24 intervention is for abuse of discretion), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

b. Due process

■ The Community's alternate argument, that due process mandated that FERC provide it actual notice of the pending proceedings, also fails. The Community contends that while publication notice of government proceedings in the Federal Register is legally sufficient for the public at large, such published notice violates due process when the names and addresses of interested parties are reasonably ascertainable. *See, e.g., Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The Community asserts that these conditions trigger the exception to Federal Register publication for "cases where notice by publication is insufficient in law." 44 U.S.C. § 1507 (1982).

The Community's contention that the *Mullane* line of cases may in some instances render publication in the federal register of government documents constitutionally inadequate has some appeal. The *Mullane* line of cases stands for the proposition that only " 'notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action' " is sufficient in law when the state is about to take action "which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment." *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (*quoting Mullane,* 339 U.S. at 314, 70 S.Ct. at 657). The Community correctly notes that since *Mullane* this requirement has meant that only actual notice to interested parties is reasonable under the circumstances when such parties' names and addresses are reasonably ascertainable. *See, e.g., Tulsa Professional Collection Servs., Inc. v. Pope,* 485 U.S. 478, 485–91, 108 S.Ct. 1340, 1345–48, 99 L.Ed.2d 565 (1988); *Mennonite,* 462 U.S. at 798–800, 103 S.Ct. at 2711–12. Here the Community, by virtue of being located on the Round Valley Indian Reservation, has statutory fishing rights in the Eel River. *See* 17 Stat. 633 (1873). This should sufficiently establish the Community's property right for purposes of due process analysis. Moreover, it is reasonable to expect that FERC knows that the Community can be reached on the Round Valley Indian Reservation, probably by means of a single letter sent to the tribal government, thus making a requirement of actual notice not overly onerous and setting the Community apart from the public at large. *See Bohannon v. American Petroleum Transp. Corp.,* 86 F.Supp. 1003, 1005 (S.D.N.Y.1949) (explaining that section 1507 was promulgated to assure a centralized place of notice to the public at large).

Nonetheless, we conclude that the Community was not entitled to actual notice from FERC under the due process clause. In *Mullane* and its progeny, imminent government action directly affecting parties' property rights necessitated actual notice.[2] The present case stands on different footing. The relicensing of a power plant

---

**2.** In *Mullane,* a New York Surrogate's Court was about to determine the relative interests of various beneficiaries in a common trust fund. *See Mullane,* 339 U.S. at 309, 70 S.Ct. at 655. In

588

cannot directly strip the Community of its fishing and water rights in the Eel River. While such relicensing conceivably could diminish the value of these rights, it is far from certain to do so. FERC was free to relicense the plant even while assuring increased water flows from the Eel River— an arrangement ultimately provided for in the settlement. FERC in fact had a fiduciary obligation to act with the Community's interests in mind in establishing its fishing and water rights.

The notion that the relicensing proceedings in the instant case would directly affect the Community's property interests, then, was purely speculative, especially given the fact that FERC was considering *relicensing* PG & E, not licensing it for the first time. The Community's property interests almost surely were already affected during the initial licensing period; it is not apparent how relicensing would affect these interests more. To require, as the *Mullane* line of cases does, that the government provide for actual notice to reasonably ascertainable interested persons is one thing. To require, as the Community urges, that the government provide for actual notice to such individuals prior to every proceeding that *might* affect their interests is quite another thing, a hopelessly burdensome standard with which an active agency like FERC could not hope to comply.

## CONCLUSION

FERC's motion to dismiss for lack of jurisdiction is granted except for that portion of the Community's petition seeking review of FERC's denial of the Community's motion for intervenor status. We con-

clude that FERC did not abuse its discretion in denying the Community's motion to intervene.

Cal Trout's petition for review is DISMISSED. The Community's petition for review is DENIED IN PART and DISMISSED. Each party shall bear its own costs for this appeal.

*Walker v. City of Hutchinson,* 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956), the city had filed suit to condemn part of the appellant's property. *See also Schroeder v. City of New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (condemnation proceedings). In *Mennonite,* 462 U.S. at 794, 103 S.Ct. at 2709, actual notice of a tax sale was given to the delinquent owner of real property but not to the mortgagee, although it is clear that such a tax sale "immediately and drastically diminishes the value of th[e mortgagee's] security interest by granting the tax-sale purchaser a lien with priority over that of all other creditors." *Id.* at 798, 103 S.Ct. at 2711. In *Pope,* 108 S.Ct. at 1343, creditors under state

statute had two months from the date of publication of notice of the commencement of probate proceedings in which to present their claims against the estate; yet because the creditor in *Pope* did not see the published notice, its claim, when finally filed, was time barred. Although the *Pope* Court described both the case before it and the earlier *Mennonite* case as standing for the proposition that "[i]t is not necessary for a proceeding to directly adjudicate the merits of a claim in order to 'adversely affect' that interest," *id.* 108 S.Ct. at 1346, both cases involved government proceedings that were incontestably going to affect the appellants' property interests.