*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2017 UT 1**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

JAMES HARVEY JORDAN,
TRUSTEE OF THE JAMES H. JORDAN REVOCABLE TRUST[1],
*Appellees,*

*v.*

EDDIE R. JENSEN and LY-THI JENSEN,
*Appellants.*

No(s). 20150257, 20150647
Filed January 10, 2017

On Direct Appeal

Eighth District, Vernal Dep't
The Honorable Samuel P. Chiara
No. 130800084

Attorneys:

Clark B. Allred, Vernal, A. Erin Bradley, Salt Lake City, for appellees
James Harvey Jordan Trustee, Martha Jordan Boright, and Laura
Ward

A. John Davis III, Christopher R. Hogle, Mark L. Burghardt,
Salt Lake City, for appellee Axia Energy, LLC

Rick L. Knuth, Brady L. Rassmussen, Salt Lake City, for appellees
Stonegate Resources, LLC, and Wasatch Oil & Gas, LLC

Daniel A. Jensen, Terry E. Welch, Matthew E. Jensen, Salt Lake City,
for appellants Eddie R. Jensen and Ly-Thi Jensen

G. Wesley Quinton, Farmington, for amici Utah Petroleum
Association and Utah Mining Association

---

[1] Other appellees are: MARTHA JORDAN BORIGHT; LAURA WARD; AXIA
ENERGY, LLC; STONEGATE RESOURCES, LLC; and WASATCH OIL & GAS,
LLC.

Sean D. Reyes, Att'y Gen., Laron J. Lind, Ass't Att'y Gen., Salt Lake City, for amicus Utah State Tax Commission

―――――――

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUDGE MCKELVIE, and JUDGE GARDNER joined.

Having recused themselves, JUSTICE DURHAM and JUSTICE PEARCE did not participate herein; THIRD DISTRICT COURT JUDGES RICHARD D. MCKELVIE and JAMES D. GARDNER sat.

―――――――

CHIEF JUSTICE DURRANT, opinion of the Court:

## Introduction

¶ 1  Here, we consider whether Utah Code section 78B-2-206 bars a challenge to a tax title based on a tax sale effected without notice to an interested party. On May 25, 2000, Uintah County conducted a tax sale, yet failed to provide the record mineral interest owners notice of the sale. Now, over a decade later, the purchaser of the tax title and the individuals who were the record owners of the mineral interest prior to the tax sale dispute for the first time who rightfully owns the mineral reserve. The purchasers of tax title raise Utah Code section 78B-2-206 as a defense. That statute precludes a party from challenging the validity of a tax title that was conveyed at a tax sale more than four years prior to suit. The record mineral interest owners argue that in failing to provide notice of the tax sale—a factual point the purchaser of the tax title concedes—the county violated their due process rights and that, therefore, the statute of limitations does not bar their suit.

¶ 2  We agree with the record mineral interest owners. Because Utah Code section 78B-2-206 was triggered by the county's tax sale—which it conducted in violation of the Due Process Clause of the Fourteenth Amendment—we cannot apply that limitations statute to bar the record mineral interest owners' suit. And because in Utah a failure to provide notice to an interested party of a tax sale also serves as a jurisdictional defect, we conclude that the county failed to obtain jurisdiction over the mineral interest at issue, thereby preventing that property interest from passing at the tax sale.

## Background

¶ 3  The facts of this case are complex, and focus primarily on various conveyances related to the property at issue. The appellees in this matter include the Jordans and Axia. The Jordans obtained the property in question from certain predecessors and retained

ownership of the mineral interest before conveying the surface estate to a subsequent owner. Believing they still owned the mineral interest, the Jordans signed leases with various parties to develop this mineral interest. One of these leases was eventually assigned to Axia, which is also an appellee in this matter. After the Jordans conveyed the surface estate, the subsequent owner failed to pay taxes and Uintah County purported to sell the property at a tax sale for unpaid taxes. The Jensens, the appellants, eventually purchased the tax title sold by Uintah County at that tax sale. These facts are discussed in greater detail below.

¶ 4  On October 25, 1954, Olivia Jordan, Marie Robertson, and Caroline Kelley (the Jordans' predecessors in interest) acquired surface and mineral rights to roughly forty acres of property (Property) in Uintah County, Utah, by a warranty deed.[2] Forty years later, on February 3, 1995, Olivia Jordan, Marie Robertson, and Caroline Kelley conveyed the surface interests of the Property to Jonathan Anthony Andrews by a warranty deed, expressly and intentionally reserving the Property's oil, gas, and mineral rights.

¶ 5  Between 1995 and 1999, Uintah County assessed annual taxes against the Property. No other taxes were assessed against the Property during that time. The tax notice for the 1995 property taxes—the year the Jordans' predecessors in interest conveyed the surface interests to Mr. Andrews—was mailed to Olivia Jordan c/o Jonathan Anthony Andrews, though she never received that notice. Thereafter, Uintah County sent all tax notices to Mr. Andrews. In 1997, Olivia Jordan conveyed by warranty deed her remaining interest in the oil and gas mineral reserve to James Harvey Jordan, Martha Jordan Boright, and Mary Edna Jordan (the Jordans). After the February 1995 severance of the mineral rights, Mr. Andrews, the new surface owner, failed to pay the property taxes for 1995,[3] 1998, and 1999, leaving $167.19 in unpaid property taxes.

---

[2] The Jordans' predecessors in interest received one hundred and sixty acres in total, but only forty acres are at issue in this case. Those forty acres are more precisely described as the NE¼NE¼ of Section 32, Township 7 South, Range 20 East, Salt Lake Meridian.

[3] The 1995 taxes were paid, in part, on November 17, 1997. The payment did not cover the entire tax obligation, leaving $8.94 unpaid.

¶ 6   Utah law provides for the annual sale of real property in May or June "following the lapse of four years from the date the property tax became delinquent."[4] Before selling real property for unpaid taxes, a county must provide notice of the tax sale, "sent by certified and first class mail to the last-known recorded owner . . . and all other interests of record, as of the preceding March 15, at their last-known address."[5] Once the county conveys tax title to the purchaser at the tax sale, any action to challenge the validity of the tax title must be brought within "four years from the date of the sale."[6] If an action is brought more than four years from the date of the tax sale, it is barred by Utah Code section 78B-2-206.

¶ 7   On May 25, 2000, Uintah County seized the Property for unpaid taxes and sold it to Quality Remediation Services (QRS) at a tax sale for $6,000.00. The district court found that "[n]o notice was ever given to the Jordans," who are owners of record, "of the [tax] assessment of 1995, the failure to pay the taxes, or the tax sale." The tax title conveyed by the county to QRS contains no reservations or exceptions, failing to recognize the Jordans' severed mineral interest. On December 13, 2000, QRS conveyed the Property to the Jensens by a warranty deed for $5,500.00. As with the tax title conveyed to QRS, the deed from QRS to the Jensens contains no reservation or exceptions. In a 2001 Real Property Transfer Survey Standard Land Questionnaire, the Jensens noted that the purchase from QRS did not include the severed mineral interest.

¶ 8   In early 2003, the Jordans purportedly leased the mineral interest rights in the Property to Landco Energy, Inc. (Landco). In May 2011, the Jordans leased the Property's mineral rights to Stonegate Resources, LLC (Stonegate). Three months later, on August 1, 2011, Stonegate assigned its lease to Axia, reserving an overriding royalty interest. Sometime thereafter, Stonegate conveyed a portion of its royalty interest to Wasatch Oil & Gas, LLC (Wasatch).

¶ 9   On November 7, 2011, Axia entered a Surface Use Agreement and Grant of Easement (Surface Use Agreement) with the Jensens. The following year, Axia secured two title opinions from two different attorneys to ensure that the Jordans owned the leased mineral interest. Both attorneys raised concerns "as to whether the mineral estate . . . passed under the Tax Deed," thereby making

---

[4] UTAH CODE § 59-2-1346(1).

[5] *Id.* § 59-2-1351(2)(a).

[6] *Id.* § 78B-2-206.

ownership uncertain. After Axia received these title opinions casting doubt on the Jordans' ownership, on March 29, 2013, the Jordans' counsel sent a letter to the Jensens asking them to sign a mineral rights quitclaim deed and explaining that if the Jensens were unwilling to sign the deed, the Jordans would be compelled to file a quiet title action. In response, the Jensens claimed ownership over the mineral estate for the first time.

¶ 10 The Jordans filed a complaint to quiet title on July 5, 2013. Among other things, the complaint alleges that no notice was given to the Jordans or their predecessors of the 1995 taxes, subsequent delinquency, or the May 2000 tax sale as required by due process. The Jensens filed their answer and counterclaim on August 9, 2013, seeking a declaratory judgment to quiet title to the mineral interest and alleging that the Jordans' action was barred by Utah Code section 78B-2-206. Eventually, the Jensens amended their counterclaim, adding a third-party complaint against Axia, which had leased the oil, gas, and mineral rights from the Jordans. For purposes of this appeal, we refer to the Jordans and Axia collectively as the Appellees.

¶ 11 After concluding discovery, the parties filed motions for summary judgment. The district court granted the Appellees' motions for summary judgment,[7] concluding that it could not apply section 206 because of Uintah County's due process violation and that the failure to provide notice to the Jordans prevented their property interest—the mineral reserve—from passing at the tax sale. The Jensens appealed the district court's judgment, and we retained jurisdiction to decide the issue.

### Standard of Review

¶ 12 We address one issue on appeal: whether the district court correctly determined that the failure to provide constitutionally adequate notice to the Jordans of the May 2000 tax sale renders Utah Code section 78B-2-206[8] inapplicable, thereby allowing the Appellees

---

[7] Both Axia and the Jordans filed motions for summary judgment.

[8] Below and on appeal the Jensens invoke both Utah Code sections 78B-2-205 and 206 but, "for ease of analysis," they focus on section 206 because both statutes "are nearly identical." Though the Jensens claim that section 205 is nearly identical, whether both statutes would yield the same outcome in a due process analysis was not something the parties briefed or analyzed. We therefore decline

(Continued)

to have the 2000 tax title declared void to the extent it purports to transfer the Jordans' mineral estate.[9] This issue requires us to interpret the Fourteenth Amendment to the United States Constitution and Utah Code section 78B-2-206. The correct interpretation of those authorities is a legal issue we review for correctness.[10] Jurisdiction over this issue is proper pursuant to Utah Code section 78A-3-102(3)(j).

¶ 13 We note that the parties preserved four other issues for appeal that we do not reach. The first is a challenge to the Jensens' first notice of appeal as premature. We decline to reach this issue as our jurisdiction over this appeal is no longer in dispute.[11] The

---

to consider section 205 in this appeal because it was inadequately briefed. *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998) (noting that an issue is inadequately briefed when "the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court"). We accordingly restrict our analysis to section 206 because all of the parties' arguments are focused on this section.

[9] We note that the Jensens contend that the Appellees should have included Uintah County in this suit because they complain of an unconstitutional taking of their mineral interest at the May 2000 tax sale. The Jensens cite no authority that would require the Appellees to include Uintah County in this suit, and we see no reason for them to have done so. The Appellees raise a due process argument not to seek damages or compensation from the county, but to render section 206 inapplicable in a manner that will allow them to pursue their quiet title action against the Jensens. They do not need to include the county to maintain this suit.

[10] *Riggs v. Georgia-Pacific LLC*, 2015 UT 17, ¶ 7, 345 P.3d 1219 (noting that the correct interpretation of statutes and the Utah Constitution is a question of law reviewed for correctness); *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 8, 201 P.3d 944 (noting that determining the due process requirements of "the Fourteenth Amendment of the United States Constitution is a question of law, which we review for correctness").

[11] When the Jensens filed their first notice of appeal on March 3, 2015 in this case, the district court had not yet ruled on Axia's post-judgment motion for attorney fees filed fourteen days after it granted the Jordans' motion for summary judgment on February 19, 2015. Axia filed a motion with the court of appeals to dismiss the Jensens' appeal as premature. On June 12, 2015, this court deferred the motion "until plenary presentation on the merits." We also

(Continued)

remaining issues raised by the parties are left unaddressed in this opinion because the due process issue decisively settles the dispute. The first of these issues is whether the district court correctly determined that Uintah County lacked the authority under Utah Code sections 59-2-101, *et seq.*, to assess the severed mineral interest. We do not address this issue because whether or not Uintah County was required to assess or had the authority to assess the severed mineral interest does nothing to alter the fact that they conducted the tax sale in violation of due process, thereby preventing the Jordans' severed mineral interest from passing at the tax sale.

¶ 14 The second issue—closely related to the first—is whether the district court erred in concluding that Uintah County did not *actually* assess the mineral interest because its assessment occurred after that property interest was severed from the surface estate. We decline to reach this issue for the same reason we declined to reach the previous issue: whether or not Uintah County actually assessed the mineral interest post-severance does not change the fact that the county conducted the tax sale in violation of due process, thereby preventing the mineral interest from passing at the tax sale.

¶ 15 The third issue appealed by the parties—unrelated to the first two—focused on whether the term "ore" in Utah's wrongful

---

"request[ed] that the parties separately address the jurisdictional issue in their briefs on the merits."

Roughly three months later, the district court denied Axia's attorney fees motion. The district court's attorney fees order states that it "is the final ruling and order in this case to the extent [the summary judgment order] was rendered non-final." The Jensens timely filed a second notice of appeal on July 28, 2015. They also filed a motion to consolidate their first and second appeals, and we granted that motion on August 20, 2015 because the two appeals "involve similar issues and share the same parties."

Even though we asked the parties to address "the jurisdictional issue in their briefs on the merits," we do not consider the substance of those arguments on appeal. The district court's denial of Axia's attorney fees order encompassed the same issues as its summary judgment order. Thus the second appeal, consolidated with the first appeal, renders any jurisdictional controversy surrounding the prematurity of appeal null. In short, the jurisdictional issue presented in this case is simply no longer a live controversy. Thus, we have jurisdiction over this case pursuant to Utah Code section 78A-3-102(3).

removal of ores statute, Utah Code section 40-1-12, encompasses "oil and gas" for purposes of treble damages. Because we ultimately conclude that the May 2000 tax sale did not convey the severed mineral interest, this issue is moot because it now amounts to an attempt by the Jensens to claim treble damages for oil and gas deposits that they never owned.

## Analysis

¶ 16 The sole issue we address on appeal is whether Utah Code section 78B-2-206 can apply to bar the Appellees' challenge to the validity of the Jensens' tax title even though Uintah County failed to provide the Jordans with notice of the tax sale as required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. To avoid unnecessary confusion, we clarify at the outset that the issue is not whether Uintah County violated the Jordans' due process rights in failing to provide them with any notice of the May 2000 tax sale. The Jensens concede that the county failed to provide the Jordans with constitutionally adequate notice of the tax sale, and the record supports this concession.[12] Instead, the issue on appeal is whether we should nevertheless apply section 206 to bar the Appellees' challenge to the validity of the tax title despite the fact that title was conveyed without due process of law.

¶ 17 The district court concluded that section 206 "does not apply to bar the [Appellees'] challenge to the tax sale," because "[t]he sale, if intended to convey the severed mineral interest, was without due process of law, and resulted in an unconstitutional taking." The Jensens argue that the district court erred in this conclusion because our precedent establishes that Uintah County's failure to provide constitutionally adequate notice did not render section 206 inapplicable, but merely made the tax title voidable during section 206's limitations period. In response, the Appellees argue that section 206 is not applicable because it was triggered by Uintah County's due process violation, and that therefore the tax title is void to the extent that it purports to convey the severed mineral interest.

¶ 18 As discussed below, we agree with the Appellees. Though in the past we have stated that section 206 can apply even where a due process violation is alleged, this is inconsistent with subsequent

---

[12] The undisputed facts show that the Jordans recorded a reserved mineral interest on the deed to the property. And even though the Jordans were interested parties of record, Uintah County did not attempt to contact the Jordans about the May 2000 tax sale.

due process jurisprudence, which stands for the proposition that when state action conducted without due process of law triggers a limitations period, the statute cannot run against the aggrieved party. Because section 206 was triggered by Uintah County's tax sale, which was conducted in violation of the Jordans' due process rights, we cannot apply it. And because in Utah a failure to provide notice of a tax sale to an interested party also prevents a taxing authority from obtaining jurisdiction over the interested party's property, we conclude that the county failed to obtain jurisdiction over the Jordans' mineral interest, thereby rendering the tax title void to the extent it purported to convey that property interest. We now further discuss each issue in turn.

## I. Our Prior Caselaw Held that Section 206 Bars Challenge to Tax Title Even Where the Tax Sale Violated Due Process

¶ 19 Section 206 is "a special statute of limitations applicable to tax titles"[13] that prevents a party from seeking to quiet tax title four years after a tax sale. The statute provides, in relevant part, that

> [a]n action or defense to recover, take possession of, quiet title to, or determine the ownership of real property may not be commenced against the holder of a tax title after the expiration of four years from the date of the sale, conveyance, or transfer of the tax title to any county, or directly to any other purchaser at any public or private tax sale.[14]

The purpose of this statute is to bring "increased stability to tax titles" by preventing untimely challenge to such instruments, "thereby augment[ing] the revenues of state and local governments."[15] In this case, it is undisputed that the Jensens are holders of tax title to the property at issue and that more than four years have elapsed since the May 2000 tax sale.[16] So if section 206

---

[13] *Frederiksen v. LaFleur*, 632 P.2d 827, 828 (Utah 1981).

[14] UTAH CODE § 78B-2-206.

[15] *Frederiksen*, 632 P.2d at 828.

[16] Section 206 provides an exception that potentially applies to the Jordans: "This section may not bar any action or defense by the owner of the legal title to the property [in this case the Jordans] which he or his predecessor actually occupied or possessed within four years from the commencement of an action or defense." UTAH CODE § 78B-2-206. In dicta, the district court found that the Jordans

(Continued)

applies, it will bar the Appellees' challenge to the validity of the tax title. The Appellees, as noted above, argue that applying section 206 in this case will violate due process.

¶ 20 Due process prevents the state from extinguishing a citizen's property rights without notice and an opportunity to be heard.[17] Notice "is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party."[18] Consequently, notice of a tax sale must be given to satisfy due process.[19] Constitutionally adequate notice is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[20] When an interested party's "name and

---

as "owners of the legal title to the unproductive mineral estate" satisfied this exception by "exercis[ing] as much possession or control of the mineral estate as possible, by periodically leasing the minerals over the many years following the tax sale." Because the Jordans did not argue on appeal that they could satisfy this exception, we do not consider the merits of such an argument.

[17] U.S. CONST. amend. XIV, § 1; UTAH CONST., art. I, § 7.

[18] *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) ("[T]here can be no doubt that at a minimum [the Due Process Clause] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing[.]"); *Worrall v. Ogden City Fire Dep't*, 616 P.2d 598, 601 (Utah 1980) ("[E]very significant deprivation, whether permanent or temporary, of an interest, which is qualified as 'property' under the due process clause must be preceded by notice and opportunity for hearing appropriate to the nature of [the] case. . . .").

[19] *Jones v. Flowers*, 547 U.S. 220, 223 (2006) ("Before a State may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" (citation omitted)).

[20] *Mullane*, 339 U.S. at 314; *see also id.* at 315 ("The means employed [to provide notice] must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.").

address are reasonably ascertainable," the state must provide notice by "means as certain to ensure *actual* notice."[21]

¶ 21 Here, the Jensens concede that Uintah County failed to provide the Jordans with constitutionally adequate notice of the tax sale.[22] But they argue that the county's failure to provide notice merely rendered the tax title voidable within section 206's four-year limitations period. To support this argument, the Jensens rely on *Hansen v. Morris*.[23] In that case, we rejected an argument that a failure to provide statutorily required notice would prevent the predecessor to section 206 from applying.[24] We also rejected a due process challenge to the application of section 206, concluding that the "defendants' assertion that such statute deprives them of property without due process of law[] cannot be sustained under the authorities applicable to limitations statutes generally."[25]

¶ 22 In rejecting these arguments, we noted that the purpose of section 206 was to validate tax titles.[26] With this purpose in mind, we ultimately held that section 206 applies to tax deeds "valid on their face . . . and executed by the same authority that could have passed good title if each and every statutory step . . . had been followed, without the aid of a limitations statute."[27] Accordingly, as the

---

[21] *Mennonite Bd. of Missions*, 462 U.S. at 800 (emphasis added).

[22] Utah Code section 59-2-1351(2)(a) requires the county to provide "[n]otice of the tax sale . . . [to] all other interests of record . . . at their last-known address." The Jordans were owners of record, having reserved ownership of the property's mineral estate. Yet it is undisputed that the county did not attempt to send the Jordans any notice of the tax sale.

[23] 283 P.2d 884 (Utah 1955).

[24] *Id.* at 886 ("In holding [the predecessor to section 206] valid, we can see no merit in any argument to the effect that if any of the statutory steps necessary to perfect a tax title have not been taken, *such as failure to give notice of sale*, . . . [then] title remains in the record owner, hence no title passes, hence any claim by the county and/or its grantee by tax deed is invalid, hence the statute of limitations does not apply." (emphasis added)).

[25] *Id.* at 887.

[26] *Id.* at 885.

[27] *Id.* at 887.

Jensens correctly argue, this court stated in *Hansen* that a failure to provide notice or a due process violation does not prevent section 206 from applying to "validate tax titles."[28] The Jensens argue that this case settles the issue before us. Yet, because of subsequent Supreme Court caselaw interpreting the Due Process Clause, *Hansen* is no longer good law on this point.

## II. Subsequent Due Process Jurisprudence Makes Clear that a Limitations Period—Like Section 206—Cannot Apply When It Is Triggered by State Action

¶ 23 The Appellees argue that *Hansen v. Morris*[29] is inconsistent with subsequent United States Supreme Court decisions regarding the requirements of due process. Specifically, they claim that, *inter alia*, *Mennonite Board of Missions v. Adams*,[30] *Schroeder v. City of New York*,[31] and *Tulsa Professional Collection Services, Inc. v. Pope*,[32] involved limitations periods that did not apply because the state failed to provide constitutionally required notice. The Jensens seek to distinguish each of these cases, arguing that none of them dealt with whether a generally applicable statute of limitations can bar challenge to an unconstitutional taking. We agree with the Appellees. These Supreme Court cases stand for the proposition that a statute providing a limitations period will not apply when it is triggered by constitutionally defective state action.

### A. Mennonite Board of Missions v. Adams

¶ 24 In *Mennonite*, a county tax sale triggered a two-year redemption period.[33] A mortgagee did not receive notice of the tax sale or of the conveyance of the property at the end of the two-year statutory redemption period.[34] The Court declined to decide whether the mortgagee was constitutionally entitled to notice at the end of the redemption period "[b]ecause [it] conclude[d] that the failure to give adequate notice of the tax sale proceeding deprived [the

---

[28] *Id.* at 885.

[29] 283 P.2d 884 (Utah 1955).

[30] 462 U.S. 791 (1983).

[31] 371 U.S. 208 (1962).

[32] 485 U.S. 478 (1988).

[33] 462 U.S. at 793.

[34] *Id.* at 794.

mortgagee] of due process of law."[35] In other words, the Court would not consider whether a redemption period could still apply with constitutionally sufficient notice because of the prior due process violation at the tax sale that triggered the redemption period.

¶ 25 The Jensens seek to distinguish this case from the facts now before us, arguing that *Mennonite* "addresses the quality of notice required to satisfy due process in the first instance, not whether a statute of limitations can bar a due process claim once notice fails to comply with [the requirements of due process]." This distinction does not adequately address the Court's opinion in *Mennonite*. As noted above, the Court refused to consider whether the mortgagee was entitled to notice at the end of a redemption period because "the failure to give adequate notice of the tax sale proceeding [which triggered the redemption period] deprived [the mortgagee] of due process of law."[36] If the Jensens' distinction is correct, surely the Court would have considered whether the mortgagee, with adequate notice, would have been barred from challenging the tax sale at the expiration of the redemption period. The Court's failure to do so strongly suggests that application of a limitations period is inappropriate when that period is triggered by a due process violation. The Court's refusal to apply a limitations period that is triggered by a due process violation can similarly be seen in *Schroeder*.

### B. Schroeder v. City of New York

¶ 26 In *Schroeder*, a limitation statute in the New York City Water Supply Act prevented a party from pursuing damages more than three years after the city diverted water.[37] Yet, because the city failed to provide constitutionally adequate notice to an owner of a diversion that occurred more than three years previous to suit,[38] the Supreme Court remanded to allow the owner to seek damages for the diversion.[39] The three-year limitation period for seeking

---

[35] *Id.* at 800 n.6.

[36] *Id.*

[37] 371 U.S. at 210. The Act required citizens affected by a diversion to bring "all claims for damages resulting from the city's acquisition [within] three years [after the acquisition]." *Id.*

[38] *Id.*

[39] *Id.* at 214.

damages, which was triggered by the city's diversion of the river, did not apply.[40]

¶ 27 The Jensens attempt to distinguish *Schroeder* from the current case by observing that the Court never addressed whether "the three-year deadline for seeking damages" was "a generally applicable statute of limitations." The Jensens conclude that the lesson to be drawn from *Schroeder* is that "a complete failure of meaningful notice can toll application of such a [statutory damages] deadline." We first note that the Jensens fail to make any argument about why the distinction between a generally applicable statute of limitations, on the one hand, and a deadline for seeking damages, on the other, is significant. We find the distinction unconvincing. Whether the damage limitation statute was a generally applicable statute of limitations is inapposite. The Court concluded that the state condemned the property owner's water interests without notice. This made the limitation period inapplicable. The unpersuasive effect of this distinction can better be seen in *Tulsa*.

### C. Tulsa Professional Collection Services, Inc. v. Pope

¶ 28 In *Tulsa*, Oklahoma's probate laws required an executor or executrix—not state actors but private persons—to provide notice by publication to creditors of an estate.[41] The creditors then had two months to present their claims to the executor or executrix or their claims would be barred by Oklahoma's "nonclaim statute."[42] The executrix in *Tulsa* complied with these requirements, "publish[ing] notice in the Tulsa Daily Legal News for two consecutive weeks."[43] A hospital that provided palliative care to the executrix's husband did not file a claim within the two-month statutory "nonclaim" period.[44] On appeal before the Oklahoma Court of Appeals, the hospital first argued that the notice was constitutionally deficient under *Mullane*.[45] That court and the Oklahoma Supreme Court rejected this argument, specifically concluding, *inter alia*, that "nonclaim statutes were self-executing statutes of limitations,

---

[40] *Id.*

[41] 485 U.S. at 481.

[42] *Id.* at 481.

[43] *Id.* at 482.

[44] *Id.*

[45] *Id.* at 483.

because they 'ac[t] to cut off potential claims against the decedent's estate by the passage of time,' and accordingly do not require actual notice."[46]

¶ 29 The Supreme Court reversed. It first noted that due process protects a property interest "only from a deprivation by state action."[47] The Court went on to note that

> [p]rivate use of state-sanctioned private remedies or procedures does not rise to the level of state action. Nor is the State's involvement in the mere running of a general statute of limitations generally sufficient to implicate due process. But when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found.[48]

The Court then framed the issue as "whether the State's involvement with the nonclaim statute [was] substantial enough to implicate the Due Process Clause."[49] It found that "[t]he probate court is intimately involved throughout, and without that involvement the time bar is never activated."[50] It noted that the probate court appoints the executrix, directs the executrix "immediately after appointment" to provide the statutorily required notice to creditors, and requires the executrix to file copies of the notices with the court.[51]

¶ 30 This pervasive involvement led the Supreme Court to conclude that the nonclaim statute was not self-executing and that applying the statute violated the hospital's due process rights.[52] Accordingly, the Court's conclusion "that the Oklahoma nonclaim

---

[46] *Id.* (alteration in original) (citation omitted).

[47] *Id.* at 485.

[48] *Id.* at 485–86 (citations omitted).

[49] *Id.* at 486.

[50] *Id.* at 487.

[51] *Id.* at 481.

[52] *Id.* at 487 ("Where the legal proceedings themselves trigger the time bar, even if those proceedings do not necessarily resolve the claim on its merits, the time bar lacks the self-executing feature that [*Texaco, Inc. v.*] *Short* indicated was necessary to remove any due process problem.").

statute is not a self-executing statute of limitations ma[de] it unnecessary to consider the appellant's argument that a 2-month period is somehow unconstitutionally short."[53] "If [the creditor's] identity was known or 'reasonably ascertainable,' then termination of [the creditor's] claim without *actual notice* violated due process."[54] In summary, the hospital should have received actual notice before its claim against the estate was extinguished,[55] and a limitation period could not operate to bar that claim.[56]

¶ 31 The relevant distinction to be drawn from *Schroeder* and *Tulsa*, therefore, is not between a generally applicable statute of limitations and a special damages or creditors' limitations period. Instead, it is between those limitations statutes triggered by state action and those not so triggered. In *Schroeder*, the three-year limitations period for damages was triggered when the city diverted the river. In *Tulsa*, the two-month nonclaim statute was triggered when the executrix—with court involvement—published notice. This distinction comes into sharper focus when *Schroeder* and *Tulsa* are contrasted with *Texaco, Inc. v. Short*,[57] wherein the Court dealt with a generally applicable statute of limitations that was not triggered by state action.

### D. Texaco, Inc. v. Short

¶ 32 In *Short*, an Indiana statute provided that "a severed mineral interest that is not used for a period of 20 years automatically lapses and reverts to the current surface owner of the property, unless the mineral owner files a statement of claim in the local county recorder's office."[58] The statute also provided "a 2-year grace period in which owners of mineral interests that were then unused and subject to lapse could preserve those interests by filing a claim in the recorder's office."[59] The mineral owners in *Short* had not used their

---

[53] *Id.* at 488.

[54] *Id.* at 491 (emphasis added).

[55] *Id.* at 487.

[56] *Id.* at 491

[57] 454 U.S. 516 (1982).

[58] *Id.* at 518.

[59] *Id.* 518–19.

mineral interests for twenty years and had failed to file a claim within the two-year grace period.[60]

¶ 33 On appeal before the Supreme Court, the mineral owners argued that the mineral lapse statute was unconstitutional because it "takes private property without just compensation in violation of the Fourteenth Amendment."[61] The Court rejected this argument, noting that a mineral interest lapsed due to the owner's inactivity and abandonment of the property, not due to state action.[62] "It is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no 'taking' that requires compensation."[63]

### III. Because Uintah County's Tax Sale Triggered Section 206, Applying It Here to Deprive the Jordans of Their Mineral Interest Would "Exceed the Limits of . . . Constitutional Permissibility"

¶ 34 These cases lead us to conclude that section 206 is not a "self-executing time bar," but is a limitations period that is and was triggered by state action. Like the statutes in *Mennonite Board of Missions v. Adams*,[64] *Schroeder v. City of New York*,[65] and *Tulsa Professional Collection Services, Inc. v. Pope*,[66] section 206 does not begin to run until the state—in this case Uintah County—undertakes adversarial action against a person's property interest. And unlike the reversion statute in *Short* that ran against all mineral owners who failed to make use of their property interests, section 206 does not come into operation until the state sells a person's property at a tax sale.[67] The statute bars a challenge to "tax title after the expiration of

---

[60] *Id.* at 521.

[61] *Id.* at 530.

[62] *Id.*

[63] *Id.*

[64] 462 U.S. 791 (1983).

[65] 371 U.S. 208 (1962).

[66] 485 U.S. 478 (1988).

[67] The Jensens argue that section 206 does not actually come into operation until a property owner is delinquent in his or her taxes. This argument is unpersuasive. Tax delinquency is necessary to trigger section 206 but not sufficient. The State must still act to sell property at a tax sale to recoup delinquent taxes. This is in stark
(Continued)

four years from the date of the sale."[68] Because the statute was triggered by the tax sale—which was conducted in violation of the Jordans' due process rights—it "lacks the self-executing feature . . . necessary to remove any due process problem,"[69] and we cannot apply it.

¶ 35 The Jensens resist this conclusion by providing one final distinction between this case and prior due process jurisprudence. In particular, they argue that no prior due process case has dealt with whether a limitations period would apply when the property owner had constructive notice of the tax sale. This is significant because in this case, the Jensens argue that the recording of the tax title gave the Jordans constructive notice of the tax sale during section 206's four-year limitations period and that this "constructive notice is sufficient to trigger section 206" without violating due process.

¶ 36 The case most supportive of the Jensens' position in this regard is *Schroeder*. In that case, the Supreme Court noted that the New York Court of Appeals below assumed that the appearance of the diverted river provided the property owner with constructive notice that someone had interfered with her water rights.[70] With such notice, the court of appeals concluded, the owner should have pursued damages within the three-year limitations period.[71] The Supreme Court rejected this argument,[72] concluding that "knowledge of a change in the appearance of the river is far short of notice that the city had diverted it and that the appellant had a right to be heard on a claim for compensation for damages resulting from the diversion."[73] From this dicta, it could be inferred that where individuals have constructive notice within a limitations period sufficient to inform them of their right to pursue a cause of action against the state for an unconstitutional taking, applying that limitations period to bar suit would not violate due process.

---

contrast to *Short* where the indolence of the property owner was both necessary and sufficient.

[68] UTAH CODE § 78B-2-206.

[69] *Tulsa Prof'l Collection Servs., Inc.*, 485 U.S. at 487.

[70] *See* 371 U.S. at 213–14.

[71] *See id.* at 214.

[72] *Id.*

[73] *Id.* at 214.

¶ 37 Though the Supreme Court has not directly addressed this issue of constructive notice, it is our view that constructive notice after an unconstitutional taking is insufficient to permit application of a limitations period when the "name and address" of a party adversely affected by the state proceeding "are reasonably ascertainable."[74] The Supreme Court has stated repeatedly that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party . . . if its name and address are reasonably ascertainable."[75] Record notice following a tax sale falls far short of this standard.

¶ 38 In this case, the Jordans were owners of record. When they conveyed the surface estate to Mr. Anderson, they reserved a mineral interest in the estate and noted this interest on the deed. When Uintah County subjected Mr. Anderson's property to the May 2000 tax sale for unpaid taxes, it could have easily ascertained the Jordans' mineral interest in the Property. So the Jordans were parties of record whose names and addresses were reasonably ascertainable and known to the county. Even if they received constructive notice after the tax sale when QRS recorded the tax title, this would not excuse Uintah County's violation of their due process rights. Due process requires that parties like the Jordans be given "[n]otice by mail or other means as certain to ensure actual notice."[76] And because section 206 was triggered by the county's unconstitutional conduct in failing to provide the Jordans with constitutionally adequate notice of the tax sale, it would be repugnant to due process to apply that statute to bar the Appellees' challenge now. Thus,

---

[74] *Mennonite Bd. of Missions*, 462 U.S. at 800.

[75] *Id.*; *see also id.* at 798 ("When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane*."); *Tulsa Prof'l Collection Servs., Inc.*, 485 U.S. at 485 ("[B]ecause the mortgagee [in *Mennonite*] could have been identified through 'reasonably diligent efforts,' the Court concluded that due process required that the mortgagee be given actual notice." (citation omitted)).

[76] *Mennonite Bd. of Missions*, 462 U.S. at 800.

contrary to the Jensens' argument, "constructive notice is [not] sufficient to trigger section 206."

¶ 39 In sum, the Jensens correctly observe that in *Hansen v. Morris*[77] we concluded that a failure to provide statutory notice would not prevent the predecessor to section 206 from operating to bar a challenge to a tax title.[78] They also correctly observe that in *Hansen*—which was decided five years after *Mullane*—we saw no merit in a due process challenge to the application of section 206.[79] But much Supreme Court caselaw has emerged since 1955. *Schroeder, Tulsa*, and *Short* all suggest that when state action occuring without due process of law triggers a statute that limits a party's ability to obtain relief, a due process violation prevents that statute from running against the aggrieved party.

¶ 40 In *Frederiksen v. LaFleur*,[80] we noted in dicta that "[w]e expressly reserve opinion on whether [section 206] could protect a tax title acquired by means repugnant to fundamental fairness or whether such an application of the statute would exceed the limits of . . . constitutional permissibility."[81] In this case, we have established the outer limits beyond which section 206 cannot constitutionally apply. To the extent *Hansen* states that section 206 can apply where a state or county fails to provide constitutionally adequate notice to an interested party of a tax sale, we overrule it. The state or a county must provide constitutionally adequate notice in order to have section 206 run, and constructive notice is inadequate.

¶ 41 Because Uintah County failed to notify the Jordans of the tax sale, and because this constitutional defect renders section 206 inapplicable, the Appellees can challenge the validity of the tax title. And since in Utah a county lacks jurisdiction to sell property when it fails to provide interested parties with notice of a tax sale,[82] the

---

[77] 283 P.2d 884 (Utah 1955).

[78] *Id.* at 886.

[79] *Id.* at 887.

[80] 632 P.2d 827 (Utah 1981).

[81] *Id.* at 831 n.14.

[82] *Home Owners' Loan Corp. v. Stevens*, 97 P.2d 744, 747 (Utah 1940) ("The failure of the county to publish the notice of said sale prescribed by [statute] rendered such sale void. It being void, the subsequent acts of the county officials with respect to the realty

(Continued)

district court correctly concluded that Uintah County lacked jurisdiction over the Jordans' mineral interest and therefore did not convey that property to the Jensens. We therefore affirm.

### Conclusion

¶ 42 Because section 206's limitations period was triggered by Uintah County's tax sale—a tax sale it conducted in violation of the Jordans' due process rights—it would violate due process to apply the statute and bar the Appellees' suit. And because the statute does not apply, permitting the Appellees to challenge the validity of the Jensens' tax title, we conclude that the county's failure to provide notice prevented the Jordans' mineral interest from passing at the tax sale. Accordingly, the Jensens' tax title is void to the extent that it purports to convey the Jordans' mineral interest. We affirm.

---

stand on the same footing as though no May sale were had or attempted." (citations omitted)); *Tintic Undine Mining Co. v. Ercanbrack*, 74 P.2d 1184, 1189 (Utah 1938) ("Any advertisement for delinquency, and on the sale of the property, in the name of a different owner, or of property of a different description than that assessed, has no foundation and is therefore void."); *see also* UTAH CODE § 59-2-1351(2)(a) ("Notice of the tax sale *shall* be provided . . . [to] all other interests of record . . . at their last-known address." (emphasis added)).